J. H. McLEARY ET AL. V. T. H. DAWSON ET AL.

No. 229.

**1. Confederate Land Certificates.**

The Act of April 9, 1881, chapter 106, Seventeenth Legislature, granting land certificates to persons disabled in service of the Confederate States, is not violative of section 4 of the Fourteenth Amendment of the Constitution of the United States. The donation was not in discharge of any debt or obligation to those persons.. The State had the right to bestow its bounty upon such of its citizens as it deemed proper subjects of it ........... ..... . 534

**2. Same—Repeal of the Law.**

The repeal of the act granting Confederate certificates could not affect the rights of assignees, although the certificates had not been located at time of the repeal ...................................................... 535

**3. Patent upon Irregular Survey.**

Although surveys under such certificates were made contrary to the law governing the location of alternate land certificates, yet patent having issued, the legal title passed to the patentee; and no one but the State, or one having a prior equity, can question the title of the patentee ............. 535

**4. Bastrop Manufacturing Company Case Adhered to.**

Maxwell v. Bastrop Manufacturing Company, 77 Texas, 233, adhered to as to the rights of said company and the mode of enforcing them .............. 536

**5. Same—Vested Rights—Constitutional Convention.**

Rights vested by the performance of all the conditions to the grant could not be destroyed by the constitutional convention of 1869.................... 536

**6. Finding of Facts by Court of Civil Appeals.**

Findings of facts by Court of Civil Appeals, on error, may be supplemented by the undisputed evidence, upon questions omitted in such findings. Both the findings and the undisputed testimony will be considered by the Supreme Court on hearing in error ...................................... 536

**7. Partnership Incorporated—Firm Property.**

The incorporation of a partnership does not operate to convey the property of the firm to the corporation; especially when the act of incorporation contemplated a conveyance by the firm to the corporation. Carothers & Searight v. Alexander, 74 Texas, 327........................................ 537

**8. Sale of Property of Corporation.**

Certain machinery of the corporation was mortgaged for its debts. Under foreclosure sale the purchasers did not become entitled to bounty lands earned by the corporation; nor did such purchasers become, in virtue of the purchase of the machinery, stockholders in the corporation............... 538

**9. De Facto Officer.**

Such purchasers of machinery of the corporation under foreclosure did not become stockholders; they had no rights as such under the charter, and they could not elect one of their number to be president of the corporation. By usurping power to which he had no color of legal right, the person so elected could not be the de facto president of the corporation.................... 538

**10. Prerequisite Conditions.**

The charter of the Bastrop Manufacturing Company required an appraisement by commissioners, one to be appointed by the Governor, one by the corpora-

tion, and they to select the third. A commissioner selected by the pur-
chasers (as above) did not represent the corporation. An appraisement
participated in by a commissioner so appointed was void. Again, as the
law prescribed that upon the filing of such appraisement the Commissioner
of the Land Office should issue certificates for land as indicated in the char-
ter, the absence of such certificates was fatal to the validity of surveys made
for said manufacturing company ...................................... 538

11. **Equitably Owned—Case Adhered to.**
Adams v. Railway, 70 Texas, 269, adhered to, that lands can not be equitably
owned as contemplated in section 2, article 13, of the State Constitution of
1876, when claimed without any lawful authority ...................... 538

12. **Good Faith Improvements—Right to Trial by Jury.**
A part of the sum allowed by the jury to the defendant for improvements
made in good faith having been without sufficient testimony, upon reversal
the question of value of such improvements must be remanded for trial by
the lower court....................................................... 539

13. **Possession in Good Faith.**
See facts held sufficient basis for improvements in good faith, yet under a
claim void in law ................................................... 539

Eʀʀᴏʀ to Court of Civil Appeals for Third District, in an appeal
from Tom Green County.

This was an action of trespass to try title, brought by J. H. McLeary,
Walter Acker, W. B. Abney, and J. C. Mathews, against T. H. Dawson
and W. J. Skinner. Dawson pleaded not guilty. Skinner also pleaded
not guilty, and set up improvements in good faith. On trial before a
jury the plaintiffs exhibited patents under surveys made under what
are called *Confederate* land certificates. The surveys were detached,
and not as prescribed for surveys under alternate certificates. The de-
fendant Skinner showed title under G. W. Jones, president of the Bas-
trop Manufacturing Company, to an older survey of the land made by
virtue of the claim of the company for lands donated in consideration
of the introduction into the State of machinery, etc. There was much
testimony, intended to show all the facts prerequisite to the right of
the corporation to acquire the land by the surveys. The court in-
structed the jury to find for the plaintiffs, but leaving to the jury the
issue suggested by Skinner as to good faith, possession, and valuable
improvements. Verdict and judgment for plaintiffs for the lands, and
for Skinner for value of his improvements.

By the Court of Civil Appeals it was held, that as to Dawson there
was no error, he not having shown any claim to the land; but as to
Skinner there was error in not submitting to the jury the question of
title; as it was held that there was testimony tending to prove that the
land was equitably owned by Skinner under the prior surveys made
for the Bastrop Manufacturing Company, under which he held. It
was also held, that there was error in one item of improvements
allowed by the jury. The case was remanded as to Skinner. The

application for writ of error claimed, that the land grant to the Bastrop Manufacturing Company was a war measure and void as in aid of the Southern Confederacy, and that the claim of the corporation for land was condemned by the State in its constitutional conventions, both of 1866 and 1869; and that there was no testimony showing that the corporation under its charter had earned any lands.

The grounds of jurisdiction in error as given in application are as follows:

"1. It involves the validity of the Act of December 15, 1863 (granting lands upon introduction of machinery, etc.).

"2. It involves the construction and application of section 34, article 12, of the Constitution of 1869.

"3. The Court of Civil Appeals in its decision, in many respects, overruled the decision of the Supreme Court in Maxwell v. Bastrop Manufacturing Company, 77 Texas, 233; and especially in that it practically decided that it was not necessary for appellants to show that the commissioners were appointed in the manner required by the statute.

"4. In holding that in the absence of evidence to the contrary it would be presumed that the application and the certificate of the Commissioners of the General Land Office were filed with the surveyor of the land district before the surveys were made for the Bastrop Manufacturing Company. The Court of Civil Appeals also overruled the decisions of the said Supreme Court in the cases of Ramsey v. Medlin, 55 Texas, 248; Snyder v. Nunn, 66 Texas, 255, and Martin v. McCarty, 74 Texas, 128, as well as said case of Maxwell v. Bastrop Manufacturing Company."

The opinion of the court gives a sufficient statement of the facts discussed.

*W. B. Abney* and *J. C. Mathews*, for plaintiffs in error.—1. The Act of December 15, 1863, was manifestly in aid of the insurrection or rebellion against the United States pending at the time of the passage of the act. This act, which will be found in 1 Paschal's Digest of Laws, pages 730 and 731, was clearly prompted by the necessities of the war, and comes within the denunciation of the Fourteenth Amendment to the Federal Constitution, and was therefore void. It must be examined by the light of the current history of the State, as well as by its intrinsic language and terms, in the attempt to arrive at the motive which prompted its passage, and the character with which it should be stamped. Examined intrinsically, we find that every article the manufacture of which is sought to be encouraged enters into and constitutes a part of war material. In the matter of arms, niter, sulphur, and powder, there can be no question but that these must be classed as war material; and yet iron enters also into munitions as essential, cotton and wool are essential for the clothing of soldiers and also for

fixed ammunition for heavy guns; cotton and wool cards and spinning jennies are essential in the manufacture of cotton and woolen goods, and oil and paper are essential to an army, and no quartermaster's store is complete without a supply of both. Indeed, at that date, all fixed ammunition for small arms was put up in paper. Here then we have an offer of bounty to any person who will erect machinery for the manufacture of certain designated articles, each one of which enters necessarily into war material and supplies enacted by the Legislature during a state of war; and when our statesmanship was directed solely to the one all-absorbing question of supplying our soldiers in the field with arms, ammunition, clothing, and other war supplies, in order that Texas might maintain the position she had voluntarily assumed with her sister States of the South, regardless of cost or sacrifice..

The court will note that the promised favors are limited by the act to such works as might have been commenced since March 2, 1861. If the statute had no relation to the war, if its purpose and design was peaceful and intended only to encourage the industrial and manufacturing development of the State, why were its benefits limited to manufactories erected since March 2, 1861, and prior to March 1, 1865? On the 2nd day of March, 1861, the ordinance of secession took effect by its terms, and on December 15, 1863, it was apparent to even a casual observer or thinker that the war must necessarily continue for several years.

2. The next proposition to which we invite the attention of the court is, that the Act of December 15, 1863, was repealed, annulled, and declared void by the convention of 1866 and the Constitution of 1869, before the Bastrop Manufacturing Company had taken any steps to assert its claim to land under the provisions thereof, and the right to acquire public domain from the State under said act, even if the provisions of the act were complied with, became a debt, and the payment thereof, either in money or land, was prohibited by section 34 of article 12 of the Constitution of 1869. The act was entitled, "An act to encourage the erection of certain machinery by donations of land and otherwise." It provided, that any person, company, or corporation desiring to avail themselves of the benefits of the act, might erect and put into successful operation by March 1, 1865, new and efficient machinery for the manufacture of iron from ore, or cotton or wool into thread or cloth, or for the manufacture of firearms, niter, sulphur, powder, salt, cotton or woolen cards, spinning jennies, paper or oil, they should be entitled to 320 acres of land for every $1000 so invested. An amendatory act was passed on November 7, 1864, authorizing the necessary buildings and structures erected for the efficient operation of the machinery to be included in the valuation. This law may be found in Session Laws of the Tenth Legislature, Extra Session, page 1. The original Act of December 15, 1863, pro-

vided, that the Governor, upon being notified of the erection and completion of the machinery, and upon being satisfied that the machinery was erected within the time prescribed, to wit, between March 2, 1861, and March 1, 1865, should appoint a commissioner to appraise the property, in conjunction with another commissioner to be appointed by the owner, and a third commissioner to be appointed by the two already selected. Upon the filing of such appraisement in the Land Office, the beneficiary was authorized to apply to any district surveyor to survey a quantity of land equal to double the quantity to which he might be entitled, a copy of which application should be forwarded to the Land Office by the surveyor in all cases. Said application was required to specifically describe the lands applied for, and upon the beneficiary filing with the district surveyor a certificate from the Commissioner of the General Land Office that the affidavit and valuation had been filed in his office, said application should exempt the lands so designated from any future location, entry, or pre-emption privileges.

The act contained no provision for issuance of certificates or patents, but provided, that the beneficiary should cause the lands to be surveyed in sections of 320 acres, which sections should be delineated upon maps, the even and odd sections being differently colored and regularly numbered, and the field notes and maps to be deposited in the Land Office. The even sections were to be reserved to the State; and all surveys should be made by the deputies and district surveyors of the district in which the land was situate, the field notes to be recorded in the district and returned to the Land Office as other surveys.

The record discloses, that no action was taken by the Bastrop Manufacturing Company under this law, nor was any claim asserted by it until November 19, 1872, when Governor Davis, on that date, addressed a letter to R. F. Campbell, appointing him agent "to take an inventory of property said to have been constructed by the Bastrop Manufacturing Company." On the — day of ——, 1873, this agent seems to have met with two other persons and made an appraisement of certain property in the town of Bastrop, claimed to have been owned by the Bastrop Manufacturing Company. We therefore insist upon this: That if said company in truth and in fact did and performed the things and acts as claimed, and did erect and put into successful operation at the town of Bastrop, within the period commencing March 2, 1861, and ending March 1, 1865, new and efficient machinery for the manufacture of wool and cotton into thread and cloth, that this did not entitle it to the State's bounty in 1872–3, because the State, by fundamental acts of sovereignty, had repudiated and annulled all obligations incurred by it within that period, long anterior to the preferment of the claim.

The people of Texas in convention assembled, in 1866, ordained and declared, among its first acts, that "all debts created by the State of

Texas, in aid of the late war, directly or indirectly, are hereby declared null and void, and the Legislature shall have no authority, and they are hereby forbidden, to ratify the same, or to assume or provide for the payment of the same or any part thereof." And so careful was the convention of 1866 upon this subject, that it went a step further in the same ordinance and further ordained, in section 3, "that the Legislature of this State shall have no authority, and are hereby forbidden to assume or make any provision for the payment of any portion of the debts contracted or incurred, or warrants issued by this State, from the 28th day of January, 1861, until the 5th day of August, 1865, except warrants issued in payment of services rendered or liabilities incurred before the said 28th day of January, 1861." See ordinance number 2, convention 1866, 4 Sayles' Civ. Stats., 333, 334.

The Constitution of 1869 used similar language to the following effect: "All debts created by the so-called State of Texas from and after the 28th day of January, 1861, and prior to the 5th day of August, 1865, were and are null and void; and the Legislature is prohibited from making any provision for the acknowledgment or payment of such debts." Const. 1869, art. 12, sec. 34. The same article goes on to repudiate all unpaid balances of salaries due employes of the State on January 28, 1861, when such employes gave aid or countenance to the so-called rebellion, and declared paid all warrants issued for military services rendered before the war and exchanged during the war for another class of securities.

The theory of the Court of Civil Appeals is, that the proposed gratuity or bounty of the State, when earned, was not a debt but only a binding obligation on the State, and was not embraced within the repudiating clauses of the enactments quoted. We submit, that such a construction would give the clauses in question a narrowness of meaning never contemplated by the people who formulated and adopted them. In a strictly legal sense the State can not owe a debt, for the term implies an obligation which can be enforced by legal process, whereas a State debt never contains in its definition any other obligation than a moral one. Rodman v. Munson, 13 Barb., 63, 188.

What, then, was the intent of the people in this matter? They had declared in 1866 that all debts incurred by the State during the war were void, and the ordinance to that effect was expressly made a part of the Constitution. Ordinance No. 9, passed March 27, 1866, 4 Sayles' Civ. Stats., 341. They again reiterated this in 1869. Clearly, to our minds, it was their intention to declare that all obligations and liabilities incurred by the State during the period of its separation from the United States were illegally incurred, and were therefore void, no matter how the obligation arose or in what manner it was competent to be discharged.

The court will understand that we do not contend that one Legislature can repeal a bounty offered by a preceding Legislature, which bounty has in the meanwhile been duly earned by the beneficiary; nor is it contended that under ordinary circumstances a State, acting in its organic capacity, can repudiate an obligation which has assumed the condition of a vested right. But the times we are discussing were sui generis, and without parallel or precedent in the American system of government. No sane person believes that Texas wished to repudiate any of her obligations—war debts or others. But she was a conquered province. Her people were helpless. Certain demands were made upon her as conditions precedent to rehabilitation under the forms of republican government, and she did what every conquered people always do—yielded to the demands of the conqueror, and practically conceded that she had no government de jure after the 28th day of January, 1861. We speak now of the action of the convention of 1866. The Constitution of 1869 went a step further, and actually declared in the section and article already quoted (section 34, article 12), that the government of Texas between January 28, 1861, and August 5, 1865, was illegal, for it called us "the so-called State of Texas" between those dates, and declared that all debts created by this so-called State were null and void. Why? Necessarily because this so-called State had no authority or power to create a debt or obligation of any character. This Constitution was in force in 1872-3-4, when the Bastrop Manufacturing Company took all its steps to secure or attempt to secure its pretended grant of lands. If Texas was "the so-called State of Texas" between January 28, 1861, and August 5, 1865, the action of Governor Davis in appointing an appraiser for said company's property in 1872 was without authority of law, for a so-called State could not grant away any part of the public domain, and there was no law authorizing the Governor to act in the matter, except this pretended statute of a so-called State.

We submit, in conclusion on this branch of the case, that all the authorities, and common sense and common understanding, show most unmistakably that the people of Texas, by the use of the term "debts" in the Constitution of 1866 and of 1869, intended and meant every character of obligation incurred by the State during the war; that they intended to wipe out and destroy all such obligations, and employed words sufficiently apt and comprehensive for that purpose; and that in 1872-3 the Act of December 15, 1863, had perished from the statute book, and could furnish no basis for the action of the governor or any other State officer, nor for any claim of said company for land, be such claim honest and deserving, or otherwise.

3. We submit, as our third proposition, that upon the trial below, in order to defeat the action of the plaintiffs, who were claiming under patents, it was incumbent on appellants to prove a real and substantial

compliance with the Act of December 15, 1863, on the part of the Bastrop Manufacturing Company, under which appellants claim. Every condition of the act constituted each a link or muniment in appellants' title or claim; and the assertion of appellants being in derogation of common right, the law held them to a strict showing of full compliance on the part of said company with each and all of the prerequisites prescribed, before they could maintain that the land claimed had been withdrawn from location before the certificates on which appellees' patents were based had been located.

The above proposition states the law as we understand it to have been declared in Maxwell v. Bastrop Manufacturing Company, 77 Texas, 233; Ramsey v. Medlin, 55 Texas, 248; Snyder v. Nunn, 66 Texas, 255, and Martin v. McCarty, 74 Texas, 128, each of which are overruled by the decision of the Court of Civil Appeals in this case. The District Court instructed the jury to find for plaintiff on the issue of title. The Court of Civil Appeals decided that this action of the District Court was error, and held that the jury should not have been so instructed, as there was evidence tending to establish all the facts essential to said Bastrop Manufacturing Company's superior right to the land; but the conclusions filed by the court, taken in connection with its opinion, show that there was no evidence tending to establish a compliance with at least some of the requisites of said act. This was in effect holding that it was not necessary for defendants to prove a compliance with all the requisites of the act, and as to one requisite of the act, the court unequivocally held, that compliance therewith might be presumed from proof of compliance with another prescribed requisite. The Court of Civil Appeals has in this way overruled the cases above referred to as effectually as if it had expressly referred to and refused to follow them.

*R. H. Ward,* for defendants in error.—1. The court erred in permitting plaintiffs to read in evidence the patents to the land in controversy, and under which they claim, because said patents are null and void, in this, the certificates by virtue of which said patents were issued were issued under and by authority of an act of the Legislature, entitled, "An act granting to persons who have been permanently disabled by reasons of wounds received while in the service of this State, or of the Confederate States, a land certificate for 1280 acres of land," approved April 9, 1881, and by reason of wounds received while in the service of the Confederate States, which said act is unconstitutional and void, because in conflict with the letter and spirit of the Fourteenth Amendment to the Constitution of the United States, and being also contrary to the public policy of the United States government. Said patents are also null and void, because the lands located for the school fund by virtue of said certificates were not located contiguous

to the lands set out in said patents. Sec. 4 of 14th Amend. Const. U. S.; "An act to encourage the erection of certain machinery by donations of land and otherwise," approved December 15, 1863; Acts 10th Leg., p. 22; 2 Sayles' Early Laws, art. 3122; 2 Sayles' Early Laws, art. 3182; Acts 1881, p. 122 (repealed by Act of February 2, 1883); Acts 18th Leg., p. 13; Const., art. 14, sec. 2; Von Rosenberg v. Cueller, 80 Texas, 253.

Appellants having prior equities, can show invalidity of appellees' patents. Bryan v. Shirley, 53 Texas, 441; Gullett v. O'Conner, 54 Texas, 408.

As to presumption of application for the surveys having been presented to surveyor: Bledsoe v. Cains, 10 Texas, 457.

2. The trial court erred in its charge to the jury, wherein the court instructed the jury as follows, to wit:

"You are instructed, that plaintiffs have introduced before you a regular chain of title from the sovereignty of the soil to the land in controversy. You will therefore return a verdict for plaintiffs for the land sued for."

The charge was erroneous, in this: the evidence shows that the locations made for the Bastrop Manufacturing Company on the land in controversy were made prior to the locations made by plaintiffs; that said Bastrop Manufacturing Company's locations were valid in law, and withdrew the land from the vacant public domain; that said land was not subject to be located on by plaintiffs' certificates; that said land was equitably owned under color of title within the meaning of the Constitution, and was not subject to location by plaintiffs; that plaintiffs' patents were null and void; the Act of April 9, 1881, under which plaintiffs' certificates were issued, is in conflict with the letter and spirit of the Fourteenth Amendment to the Constitution of the United States, and contrary to the public policy of the government of the United States. Said charge was further erroneous, in that all the evidence in the case showed, that the Bastrop Manufacturing Company, under and through whom defendants claimed the land in controversy, had a perfect title to said land, and that plaintiffs had no title to the same. Maxwell v. Manufacturing Co., 77 Texas, 233; Cool. Const. Lim., 5 ed., p. 222.

BROWN, Associate Justice.—This suit was instituted by the plaintiffs in error against the defendants in error to recover the land described in the petition.

Plaintiffs' petition was in the form of trespass to try title. The defendants pleaded not guilty, and defendant Skinner pleaded possession in good faith and valuable improvements.

The court instructed the jury to find for plaintiff for the land, and submitted to them the question of improvements in good faith as claimed

by defendant Skinner. A verdict was rendered for plaintiffs for the land, and for Skinner for improvements. The defendants appealed to the Court of Civil Appeals, which reversed the judgment and remanded the case as to Skinner, and affirmed the judgment of the District Court as to Dawson.

Plaintiffs claim title to the land under patents issued to Acker & Toland in 1890, which embraced the lands claimed by defendants. It was agreed that plaintiffs have the title of Acker & Toland.

The patents were issued by virtue of certificates granted under an Act of the Legislature of Texas, entitled, "An act granting to persons who have been permanently disabled by reason of wounds received while in the service of this State, or of the Confederate States, a land certificate for 1280 acres of land," approved April 9, 1881. The certificates were transferred to the patentees in 1882. The record does not show when the original surveys or the locations were made, but corrected field notes were returned to the General Land Office in 1890. The act under which the certificates were granted was repealed February 2, 1883.

Defendants claim the land under surveys made for the Bastrop Manufacturing Company, and field notes returned to the Land Office in 1874. The claim of defendants is based upon the following facts: The Legislature of Texas passed an act entitled, "An act to encourage the erection of certain machinery by donations of land and otherwise," approved December 15, 1863, which granted lands to persons or corporations erecting and putting into operation specified kinds of machinery, prior to March 1, 1865. S. S. Munger and others, under the name of Ward, Munger & Co., purchased and began the erection (if they did not complete it) of machinery of the kind specified in the act, and afterwards procured a charter, by special act of the Legislature, entitled, "An act to incorporate the Bastrop Cotton and Wool Manufacturing Company," approved November 7, 1864. In 1868 the Bastrop Manufacturing Company, being indebted, gave a deed of trust to Jones & Sayers, as trustees, upon certain property described in the deed, with power to sell it and to pay the debts named. The debts not being paid, the trustees sold the property, and John Fawcett purchased it for himself, G. W. Jones, and others, who afterwards formed a partnership, under the firm name of John Fawcett & Co.

At some subsequent date, the purchasers of the property and others to whom they had sold interests assumed to own the stock of the Bastrop Manufacturing Company, though there never was any transfer of the stock to either of said parties, and under that assumption of ownership of stock, *reorganized* the said corporation, electing G. W. Jones president. Fawcett, who seems to have been president of the company before the sale, and presumably a stockholder, delivered the seal of the company to Jones. Fawcett & Co. paid the debts of the cor-

poration. The Governor of Texas, E. J. Davis, wrote to one Campbell, appointing him agent of the State to inventory the property "said to have been erected and put in operation" by the company, and gave directions as to what he should do, which letter will be referred to more particularly if found necessary in the disposition of the case.

G. W. Jones, acting as president of the Bastrop Manufacturing Company, appointed A. A. Erhard as commissioner to represent the company; Erhard and Campbell appointed J. L. Delaney, and the three proceeded under the law to inventory and appraise the property, and returned the appraisement and affidavits to the Commissioner of the General Land Office. The Commissioner of the Land Office refused to issue any certificate thereon, but Jones took a certified copy of the report of the commissioners and placed it in the hands of certain land agents and surveyors, and had the land surveyed and the field notes returned to the General Land Office, the surveys being platted on the map of the county in the Land Office. Jones afterwards bought the interest of his associates in the property purchased at the sale of the property of the manufacturing company, and claimed to be owner of all the stock of the corporation, and assumed to act as president of that corporation. As such sole stockholder and president, as well as in his own right, Jones for a valuable consideration deeded the lands to the defendant Skinner.

The defendants claim that the patents under which the plaintiffs assert title are void, for the following reasons:

1. That the act under which they were issued is in violation of section 4 of the Fourteenth Amendment to the Constitution of the United States, because said donations were in discharge of a debt or obligation incurred in aid of the rebellion.

2. That the act under which the certificates were issued was repealed before they were located, and no saving made of the rights of holders of unlocated certificates.

3. Because the lands were not located in alternate sections for the locator and the school fund as required by law.

If the patents are void, then plaintiffs can not recover, though defendants may have no title; and it becomes necessary, as plaintiffs are asking a reversal of the judgment of the Court of Civil Appeals, to determine as to the validity of these patents before proceeding to examine into defendants' title.

The patents under which plaintiffs claim passed the legal title to the patentees, and are not subject to attack by any one except the State, or some person having a prior legal or equitable right to the land.

The Act of 1881, under which the certificates were issued to "persons permanently disabled while in the service of the State or the Confederate States," is not violative of the fourth section of the Fourteenth Amendment to the Constitution of the United States. The Legislature

in enacting this law did not pay or discharge any debt or obligation to those persons, except a moral obligation to aid persons who were unable to support themselves by reason of disability, and it did not matter whether that condition was produced by wounds received in the service of the State or Confederate States during the war between the States, or by other causes. The State had the right to bestow its bounty upon such of its citizens as it might think proper subjects of it.

The repeal of the Act of 1881 did not affect the rights of the holders of certificates transferred to them before the repeal took effect. They had a vested right of property in them that the Legislature could not destroy if it had been so intended; but we do not think the law subject to that construction. We do not intend to intimate that it would have a different effect as to the original grantees.

Although it has been held that the location of the certificates as alleged to have been in this instance was contrary to law, and that such locations and surveys were void as such, yet when the land was patented upon these surveys the legal title passed to the patentees, and no one but the State or some one having a prior legal or equitable claim could set up the illegality in making the surveys. Todd v. Fisher, 26 Texas, 239; Bryan v. Shirley, 53 Texas, 459; Wood v. Durrett, 28 Texas, 438. In the case of Wood v. Durrett, the location and survey were void when made, and would not support an action; but after the patent issued the court held, that it could not avail one who had no prior equity. The court said in that case: "Although the survey upon which plaintiff counted in his original petition was void, his patent (which had been issued subsequently to the filing of the suit) is evidence of title (under the amended petition), and the judgment of the court below in his favor can not be questioned, unless the defendant has shown an older and superior right."

The plaintiffs were entitled to recover, and the district judge rightly instructed the jury, unless there was evidence tending to establish all the facts necessary to show that the surveys made for the Bastrop Manufacturing Company were made according to law.

Plaintiffs contend that the defendants never had any valid claim to the lands, because:

1. The Act of December 15, 1863, under which they claim was in aid of the "*rebellion,*" and void.

2. Because said act was annulled by the Constitution of 1869.

3. That the Bastrop Manufacturing Company never had any right to acquire the land.

4. If that corporation had such right it never passed to Jones and his associates; that said company never took any steps to acquire the land, and the proceedings by which the land was surveyed were void.

5. That the Governor of Texas never appointed a commissioner under the statute.

6. That the Commissioner of the General Land Office never issued any certificate as required by law, and no such certificate was presented to the surveyor.

It devolved upon the defendants to prove the facts essential to show that the right of the Bastrop Manufacturing Company to acquire the land under the act in question existed, and that this right had been exercised in the manner required by law; also that the right acquired by the surveys was vested in them, the defendants. Maxwell v. B. M. Co., 77 Texas, 233.

Plaintiffs in error contend that the Act of December 15, 1863, entitled, "An act to encourage the erection of certain machinery by donation of land and otherwise," was enacted in aid of the "rebellion," and therefore void. This question was properly disposed of by the Court of Civil Appeals, and does not require further notice. It is likewise claimed, that the act was annulled and all rights under it destroyed by section 34, article 12, of the Constitution of 1869. This was not a debt within the meaning of the Constitution, and therefore is not affected by it. If, however, the parties had performed all the acts required by the law of 1863 so as to entitle them to acquire the land, it became a vested right that the convention which framed the Constitution could not have destroyed, if the language justified the conclusion that it was so intended.

The findings of fact by the Court of Civil Appeals are not sufficiently full upon some points for a perfect understanding of the questions presented, and we resort to the undisputed evidence upon these questions in aid of the findings of fact.

It appears from the evidence, that in 1863 S. S. Munger, P. R. Smith, and A. J. Ward entered into a partnership, under the firm name of Ward, Munger & Co., for the purpose of erecting and operating machinery at Bastrop, Texas, for the manufacture of wool and cotton into thread and cloth, and did erect the machinery and perhaps operated it. They with others then secured a charter from the Legislature, under the name of the Bastrop Manufacturing Company, by special act, entitled, "An act to incorporate the Bastrop Cotton and Wool Manufacturing Company," approved November 7, 1864. The third section of this charter is as follows: "That the buildings, lots, engines, spinning, and all the factory machinery of Ward, Munger & Co. in the town of Bastrop, now being put in operation by them, is hereby declared to be the property of the said Bastrop Manufacturing Company, upon the said Ward, Munger & Co. executing to the said manufacturing company proper releases," etc. This section of the charter, under which plaintiffs claim, declares in effect, that the building, lots, engines, spinning, and all factory machinery, etc., was then the property of Ward, Munger & Co.; and it also discloses the purpose on the part of the incorporators, that this property should by proper

conveyance pass to the corporation.   It follows, that if Ward, Munger & Co. had then acquired the right to land, it did not pass to the corporation by this act of incorporation.   Carothers & Searight v. Alexander, 74 Texas, 327.   There is no evidence that the firm or the members of the firm of Ward, Munger & Co. ever transferred this right to the manufacturing company.   We think, that if the machinery was not at the time put into *successful operation* as required by law, but was afterwards so put into operation by the corporation, the right to the land would be complete in the persons who had erected and were putting into operation, and not in the corporation, which certainly had not erected it according to its charter.   The relations between the members of the firm and the corporation which they procured to be formed, and of which they were stockholders, were such, that the corporation might under the law have taken the right to acquire the land by transfer, although not authorized by law to purchase and hold real estate except such as might be necessary to carry out the purposes of its creation.   If it be admitted that the right to the land vested in the manufacturing company by virtue of the charter, it is certain that this right did not pass to the purchasers, Fawcett, Jones, and others, under the trust deed.   Maxwell v. B. M. Co., 77 Texas, 233.

The second section of the Act of 1863, under which the right to the land is claimed, provides, that upon being "notified of the erection and completion of any machinery of the kind specified in the foregoing section, and upon being satisfied that said machinery was erected and put into operation within the time prescribed in the first section of this act, it shall be the duty of the Governor and owner or owners of said machinery to appoint each one disinterested person to act as commissioner, who shall appoint a third commissioner to act with them, in the valuation of said machinery."   The section prescribes the oath to be taken by the commissioners.   The third section prescribes the manner of making and returning the appraisement to the General Land Office.   The fourth section grants to each person or corporation complying with the law, 320 acres of land for each $1000 of value of the property as appraised.   The fifth section directs, that the person or corporation having complied with the law shall receive from the Commissioner of the General Land Office a certificate to the effect that the law has been complied with by filing the appraisement and affidavits required, and shall present it, with an application describing the land to be surveyed, to the surveyor of the district, whereupon the land shall be surveyed, and be thereafter exempted from preemption or location.

Looking to the protest filed by Governor Davis in the General Land Office, and the letter written by him to Campbell, we conclude that he intended to appoint Campbell commissioner under the statute.   It is not necessary for us to decide whether or not it is in such legal form as

to be valid, for the law required also that the proper parties, those entitled to the land, should select one commissioner, who, with the commissioner appointed by the governor, should appoint a third, who should appraise the property, machinery, etc. Jones had no right in the matter by reason of his purchase of the machinery, as we have seen, to act in the matter. He, however, assumed to act as president of the Bastrop Manufacturing Company, and in its name appointed a commissioner. He owned no stock in that corporation, neither did those who elected him. It was said that Jones was de facto president. In order to be a *de facto corporation* there must be a right under the law to incorporate, and an attempt to comply with the law, but a failure to comply with some requirements thereof. In this case, Jones and those who acted with him had no rights under the charter; and he could not be de facto president of a de jure corporation by usurping powers to which he had no color of legal right, based upon the action of a self-constituted body which was not even a de facto corporation. Allen v. Long, 80 Texas, 266.

We conclude that the appointment of Erhard by Jones was without any authority of law and void, and therefore that the appraisement was void and gave no right to any one.

The law required that the Commissioner of the General Land Office issue his certificate, showing compliance with the law, as a prerequisite to the making of the surveys; and this not having been done, no legal survey could be made. Jones testified, that the Commissioner of the General Land Office refused to issue "land certificates to the company," and that he (Jones) took a certified copy of the appraisement and affidavits, and had the land surveyed upon them. This the law did not authorize. These papers were filed in the Land Office as evidence upon which the Commissioner was directed to act, and, finding them to be correct, was required to issue the certificate stating that fact, upon which certificate the land could be surveyed.

Therefore, if we admit as true all that the evidence tends to prove, that is, that the Bastrop Manufacturing Company was entitled to acquire the land, the defendants have failed to show any right in this land; because, in the first place, that company did not appoint the commissioner to appraise the property, and Jones had no power to do so; and secondly, if the corporation had performed all these acts, the surveys made without the certificate being issued by the Commissioner of the General Land Office were without authority and void. The defendants had no right, legal or equitable, in the land.

It is suggested by the Court of Civil Appeals that this land, being "equitably owned" by defendant Skinner, was not subject to location under section 2, article 14, of the Constitution of 1876. The claim here presented does not come within the provisions of the Constitution. Adams v. Railway, 70 Texas, 269. In the case last cited, the court

say: "It must not only be claimed under such color of title, but the facts which give color of title must also give equitable ownership, or the provision of the Constitution does not give protection." This was an attempt to appropriate land without any lawful authority, and could not constitute color of title; the land was subject to location by plaintiffs.

The Court of Civil Appeals found, that the defendant Skinner was not entitled to recover a part of the sum awarded to him by the jury for improvements, and as we believe that he is entitled to a trial before a jury upon this issue, the cause having been tried by jury, we will not undertake to adjust the rights of the plaintiffs and defendant Skinner to improvements and rents. It is therefore ordered, that the judgments of the District Court and the Court of Civil Appeals be reversed, and the cause be remanded to the District Court, with instructions to try the issue between the plaintiffs and defendant Skinner as to rents and improvements in good faith, and thereupon to enter judgment for the plaintiffs against Dawson and Skinner for the land. It is ordered, that plaintiffs in error recover of defendants in error all costs of the Court of Civil Appeals and of this court.

*Reversed and remanded.*

Delivered February 18, 1895.