**HUNT et al. v. ATKINSON, County Judge, et al. (No. 941—5050.)**

Commission of Appeals of Texas, Section B.
Jan. 2, 1929.

143

Ward & Ward, of Houston, for plaintiffs in error.

Sewall Myer and J. H. Painter, both of Houston, for defendants in error.

SPEER, J. The case is thus well stated by Chief Justice Pleasants of the Court of Civil Appeals (300 S. W. 656):

"This appeal is from a judgment of the court below in favor of appellees in a suit for mandamus brought against them by appellants to compel the appellee Atkinson, county judge of Harris county, to call an election to determine whether the inhabitants of certain territory in Harris county described in the petition should incorporate said territory under a commission form of municipal government, and for the election of a mayor and two commissioners, as provided for by articles 1154–1159, Revised Statutes 1925. Appellee, the city of Houston, was made defendant because of its claim of jurisdiction over the territory described in the petition by the passage by the city council of an ordinance extending the corporate limits of the city so as to include said territory.

"The record discloses the following facts: A petition for an election for territory described in the petition and designated as Brooke Smith, then unincorporated, to determine upon incorporation under the commission form of government, and to elect a mayor and two commissioners as provided by articles 1154–1159 of the Revised Statutes of 1925, was filed with the county judge of Harris county on the 27th day of May, A. D. 1927.

"The petition was in all things in accordance with the law, and met every legal requirement, and the county judge so found.

"The county judge acted on said petition on the 10th day of June, 1927, and refused to call said election, giving as his reasons that the city council of the city of Houston had, on the 31st day of May, 1927, passed an ordinance extending the limits of the city of Houston to take in the territory described in the petition. The order of the county judge on the petition is in part as follows:

" 'And, although I find said petition has the requisite number of signers, duly qualified voters residing within said territory, to require the calling of such election, it is a matter of public knowledge that subsequent to the filing of said petition with me and before I determined the sufficiency thereof, and on or about the 31st day of May, 1927, the city council of the city of Houston passed on its third reading an ordinance extending the territory described in the foregoing petition, and I do therefore decline and refuse to call the election prayed for in said petition.'

"The provision of the city charter of the city of Houston under which the city council passed such ordinance is as follows:

" 'Sec. 2b. Extending Limits by Action of City Council.—The city council shall have power by ordinance to fix the boundary limits of the said city of Houston and to provide for the extension of said boundary limits and the annexation of additional territory lying adjacent to said city with or without the consent of the territory and inhabitants annexed; that upon the introduction of such an ordinance in the council after it has been reported upon by the ordinance committee and has been amended as desired by the council for final passage, it shall be published in some daily newspaper published in the city of Houston one time and shall not thereafter be finally passed until at least 30 days has elapsed after said publication, and when said ordinance is finally passed the said territory so annexed

shall be a part of the city of Houston, and the inhabitants thereof shall be entitled to all the rights and privileges of other citizens, and shall be bound by the acts, ordinances, resolutions and regulations of the said city.'

"No election was held in the city of Houston to determine whether the corporate limits of the city should be extended to include the 'Brooke Smith' territory. The ordinance making such extension was duly passed in strict compliance with the provision of the city charter."

The Court of Civil Appeals affirmed the judgment of the trial court. 300 S. W. 656.

The affirmance was ultimately placed upon the ground that plaintiffs in error's suit is a collateral attack upon the corporate existence of the city of Houston, and it is to a consideration of this point we will address ourselves for the most part.

As preliminary to the main question to be considered, it is necessary to determine whether or not section 2b of the city charter of the city of Houston quoted above is a permissible method for the extension of the boundary limits and the annexation of adjacent territory to said city. This is the method pursued in the present case in the annexation of the "Brooke Smith" territory, and if the law allows that method the present suit must fail whatever irregularities may have existed in the pursuit of that method. For, as said by Chief Justice Pleasants:

"The general rule that the valid existence of a de facto municipal corporation authorized to exist under the laws can only be questioned in quo warranto proceedings brought by the authority of the state has been recognized and enforced by many decisions of our Supreme Court and Courts of Civil Appeals."

Perhaps the very latest authoritative expression upon this subject is that of Kuhn v. City of Yoakum (Tex. Com. App.) 6 S.W. (2d) 91.

But we will revert to the initial question.

Article 1265, Revised Civil Statutes, under the chapter head of "Miscellaneous Provisions," concerning cities, towns and villages, provides:

"Any city having a population of 100,000 and under 150,000 as shown by the preceding Federal census, shall have the power and authority to amend its charter so as to extend its boundary limits by annexing additional territory adjacent and contiguous to such city, where the territory so annexed does not include any incorporated city or town having more than five thousand inhabitants according to the preceding Federal census. Such extension shall be effected in the manner following:

"1. The governing body of such city may, upon its own motion, and shall upon the petition of at least ten per cent. of the qualified voters of said city as shown by the preceding general election, submit such proposed amendment to a vote of the qualified voters of such city, which election shall be held as provided by chapter 13 of this title."

Section 5, art. 11, of the Constitution, commonly known as the Home Rule Amendment, provides:

"Cities having more than five thousand (5,000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the constitution of the State, or of the general laws enacted by the legislature of this State. * * *"

This provision constitutes a part of article 1165 of the present statutes. The present charter of the city of Houston was adopted by the qualified voters of the city in obedience to this enabling act. So that the question squarely arises whether or not the provision of the charter for the extension of the city's boundaries by simple ordinance is inconsistent with article 1265, authorizing such extension upon an election ordered for that purpose.

First, article 1265 is a general law even though, necessarily, it applies in practical results only to a very limited number of cities in the state. It does apply to all cities in the state coming within its terms. See Clark v. Finley, 93 Tex. 178, 54 S. W. 343; O'Brien v. Amerman, 112 Tex. 254, 247 S. W. 270.

If the charter provision contained in section 2b is inconsistent with article 1265 of the General Statutes, it must perforce of the Constitution fall. Article 1265 recognizes the power and authority of a city having a population of 100,000 and under 150,000 to amend its charter so as to extend its boundary limits by annexing additional adjacent territory where such territory does not include any incorporated city or town having more than 5,000 inhabitants, but expressly states that "such extension shall be effected in the manner following." Now, that manner following contemplates that such extension may have its inception in one of two ways. First, the city may upon its own motion, and, second, it shall upon the petition of at least 10 per cent. of the qualified voters of the city, "submit such proposed amendment to a vote of the qualified voters of such city." The city is given the power to initiate the proposal for such an annexation, but even when thus initiated it is required that the proposed amendment shall be submitted to a vote of the qualified voters of such city and gives direction as to the holding of such election. It needs no argument to show that the charter right attempted to be exercised in this case to annex the adjacent territory by simple ordinance without any attempt to submit such matter to the

qualified voters of the city is thoroughly inconsistent with the expressed requirement that a proposed extension amendment originating upon the governing body's own motion must be submitted to a vote of the qualified voters of such city. In this respect the charter provision and the general statute speak to the precise point and speak differently as to methods. There is patent inconsistency, and the charter provision, being void, affords no authority or "color of authority" for the attempted annexation of the territory in question. See Brown v. Fidelity, etc., Co. (Tex. Com. App.) 280 S. W. 567; City of Beaumont v. Fall, 116 Tex. 314, 291 S. W. 202; McCutcheon v. Wozencraft, 116 Tex. 440, 294 S. W. 1105.

■■ There is another consideration that reaches the same result: Where two statutes cover the same subject, the one general and the other special, the special statute will control, not upon any theory of implied repeal, but upon the broad rule that all parts of the act or statutes must stand if possible, and that the intention of the Legislature is more clearly reflected by the special statute than by the general one. Both are permitted to stand, the special article or enumeration being treated as though it were a proviso excepting something from the general rule. Thus, here, the general statute, broadly covering all cities of more than 5,000 inhabitants, under the Home Rule Amendment and the enabling act, permits an extension of the city's boundary limits by ordinance of the governing body, but article 1265, applying specially to such cities as have 100,000 and not exceeding 150,000 inhabitants, requires the method to be by popular election. Both statutes thus stand, each applying in its proper place. Fortinberry v. State (Tex. Com. App.) 283 S. W. 146.

■ Having determined that article 1265 prescribes the only method whereby the city of Houston is authorized to extend its boundaries to include territory such as that in controversy, we come to consider whether or not the rule forbidding collateral attack upon existing corporations is applicable. The rule itself is well recognized and rests upon the soundest public policy. But an examination of the numerous cases supporting it will show that it applies only in those instances where the corporation attacked is at least a de facto corporation by virtue of an attempted organization under "color of law." A corporation, for the existence of which de jure there is no law, cannot be a de facto corporation, and its existence may be attacked directly or collaterally, or even ignored since it is in law nothing. It affords no rights and presents no defenses at any time, or as to any person. See Empire Mills v. Alston, etc., Co. (Tex. App.) 15 S. W. 200; Lum v. City of Bowie (Tex. Sup.) 18 S. W. 142; Parks v. West, 102 Tex. 11, 111 S. W. 726. Before an attempted organization can be

said to be under "color of law," there must have been a good-faith attempt to organize in the method prescribed by existing law, and at least a colorable compliance with that law. McLeary v. Dawson, 87 Tex. 524, 29 S. W. 1044; Allen v. Long, 80 Tex. 266, 16 S. W. 43, 26 Am. St. Rep. 735; Finnegan v. Noerenberg, 52 Minn. 239, 53 N. W. 1150, 18 L. R. A. 778, 38 Am. St. Rep. 552; 14 C. J. 217, § 225. Where such attempt is made and the concern functions in the manner usual to such corporations, it becomes a corporation de facto, if not de jure, whatever the irregularities in the method of pursuing the statutory authority. This distinction abundantly appears from an examination of the authorities forbidding collateral attacks upon corporate existence, and to cite authorities would be to catalogue those numerous decisions.

■ In this case there was no attempt whatever on the part of the city of Houston to enlarge her borders in the only manner authorized by law; that is, by an election in which the proposed amendment was submitted to a vote of the qualified voters of the city. The method indisputably attempted was wholly unknown to the law. The wholesome rule forbidding collateral attack upon corporate existence is founded upon a sound public policy based upon respect for law and in no wise upon recognition of defiance of law. The charter provision being void, the city of Houston is in no better position to defend upon the doctrine of collateral attack than if it had attempted to annex the disputed territory upon a vote of the inhabitants of that territory (which would be intrinsically fair at least to the annexed inhabitants) by petition of such inhabitants, or by any other method unknown to the law. A proceeding indisputably not by way of attempt to comply with an existing law cannot by any stretch of construction be held to be had under "color" of law. Such a proceeding is political self-determination and not colorable compliance with superior law.

■ The petition for an election to incorporate the territory known as "Brooke Smith" territory being sufficient, the county judge should have ordered such election unless such territory already was incorporated in the city of Houston, and having shown that such was not the fact, either de jure or de facto, no defense is shown to the application and the mandamus should issue.

We accordingly recommend that the judgments of both courts be reversed and judgment be here rendered awarding the relief prayed for by plaintiffs in error.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for the plaintiffs in error, as recommended by the Commission of Appeals.