**BROWN et al. v. FIDELITY INV. CO. et al.
(No. 607–4441.)***

(Commission of Appeals of Texas, Section B.
Feb. 17, 1926.)

**1. Statutes ⚮76(6)—Provision in city charter authorizing denial of right of redemption after tax sale held void (Vernon's Sayles' Ann. Civ. St. 1914, art. 963; Const. art. 11, § 5; article 3, § 56; article 8, § 13).**

Provision in City Charter of Houston, chartered under Const. art. 11, § 5, authorizing denial of right of redemption after tax sale, *held* void as violating article 3, § 56, providing that no local law shall be enacted where general law can be made applicable, Vernon's Sayles' Ann. Civ. St. 1914, art. 963, enacted after decision declaring that Const. art. 8, § 13, referred to summary sales only, and providing for right of redemption in sales under foreclosure tax suits, being controlling in Houston as in other cities.

**2. Constitutional law ⚮15.**

All provisions of Constitution affecting same thing should be given effect, where possible.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action of trespass to try title by the Fidelity Investment Company against James Brown and others. Judgment for defendants was reversed (274 S. W. 265), and defendants bring error. Reversed.

W. C. Carpenter, of Bay City, J. P. Rogers, of Houston, and Styles, Krause & Erickson, of Bay City, for plaintiffs in error.

Ward & Ward, of Houston, for defendants in error.

POWELL, P. J. The opinion of the Court of Civil Appeals states this case fully. See 274 S. W. 265. Briefly, it involves the right of one of the parties thereto to redeem, within two years after a tax sale under foreclosure proceedings, the tract of land in suit. The sale was made under foreclosure by the city of Houston. The redemption right was refused. Resort was had to the district court of Harris county. That court held that the owner of the property had that right. Upon appeal, the Court of Civil Appeals held otherwise and reversed the judgment of the trial court and rendered judgment for appellant in that court. We are to determine which of those courts entered the correct judgment. There is no dispute about the facts.

[1] Section 13 of article 8 of our State Constitution reads as follows:

"Provision shall be made by the first Legislature for the speedy sale of a sufficient portion of all lands and other property for the taxes due thereon, and every year thereafter for the sale of all lands and other property, upon which the taxes have not been paid; and the deed of conveyance to the purchaser for all lands and other property thus sold shall be held to vest a good and perfect title in the purchaser thereof, subject to be impeached only for actual fraud; provided, that the former owner shall, within two years from date of purchaser's deed, have the right to redeem the land upon the payment of double the amount of money paid for the land."

On December 12, 1898, our Supreme Court, in the case of San Antonio v. Berry, 48 S. W. 496, 92 Tex. 319, held that this article of the Constitution referred to summary sales only and not to those under foreclosure tax suits. The Legislature met about 30 days thereafter and passed the following act:

"Be it enacted by the Legislature of the State of Texas:

"Section 1. That all lands sold under and by virtue of decree and judgment of court for taxes due any incorporated city or town within this state may be redeemed by the owner or owners thereof within two years from the date of deed upon the payment to the purchaser, or his assigns, of double the amount so paid, including costs of court; provided, that purchaser at such foreclosure sale, and his assigns, shall not be entitled to the possession of the property sold for taxes until the expiration of two years from the date of deed.

"Sec. 2. The fact that numerous sales of property, including the homestead, are being had under decree of court for taxes due incorporated cities and towns, and the owners thereof are being dispossessed and expelled therefrom under writs of possession incident to said decrees of foreclosure, and the owners of said property, in many instances, are being rendered homeless thereby, and property rights destroyed, notwithstanding the Constitution of this state provides that land sold for taxes may be redeemed by the owner within two years from the date of purchasers' deed upon the payment of double the amount of money paid for the land, therefore existing oppressive conditions create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days be suspended, and that this act be put on its third reading and final passage, and it is so enacted." Laws 1899, c. 40.

The first section of this act of 1899 became article 963 of Vernon's Sayles' Revised Civil Statutes of Texas 1914. Under the protection of this act, and under the constitutional provision already quoted and construed by the court as aforesaid, no city can deny to any person the right to redeem his land from any kind of tax sale within the two-year period. But, in 1905, the Legislature granted to the city of Houston a special charter. One of its provisions authorized that city to sue for taxes, foreclose its lien, and deny to the defendant his right of redemption. Unquestionably, the charter provision is in direct conflict with the general statute aforesaid upon the same subject. It is for us to determine which

is controlling, the charter or the statute. If the general statute, then the district court must be affirmed. If the charter, then the Court of Civil Appeals must be upheld.

It is contended that the charter provision is unconstitutional and void because in contravention of section 56 of article 3 of our State Constitution. The applicable portion of this section reads as follows:

"And in all other cases where a general law can be made applicable, no local or special law shall be enacted."

[2] This section contains numbers of other provisions, affecting which no local or special law can be passed. It says that the Legislature, except as otherwise provided in the Constitution, shall not pass any local or special law incorporating cities, towns, or villages, or changing their charters. But section 5 of article 11 of the Constitution, prior to 1912 and when the charter provision before us was passed, did provide that cities having more than 10,000 inhabitants might be chartered by special act of the Legislature. However, this article did not provide that such a special act might contain any provision contrary to a general statute applicable to the other cities of the same class. It is a general rule of construction that all provisions of the Constitution affecting the same thing should be given effect where possible. Since it is not otherwise provided, it seems to us that the Constitution must mean that the power to grant special charters by local or special acts is subject to the other provisions of the Constitution with reference to local and special acts. In other words, the city charters can be passed by local acts within the limitations of the Constitution itself. So, it seems clear to us that in framing this last-named article referring to the chartering of certain cities by special act, the framers of our fundamental law had no intention whatever to permit the passing of such a local or special act in such a way as to repeal, within any given city, the provisions of a general law applicable to other cities of the same class.

The Court of Civil Appeals says the charter provision is constitutional because the Supreme Court has decided that the Legislature, in passing these special city charters, is not limited by section 56 of article 3. In support of this statement, but one case is cited, and that is City of Dallas v. Western Electric Co., 18 S. W. 552, 83 Tex. 243. We do not think this case supports the conclusion of the Court of Civil Appeals. What were the facts in that case? A writ of garnishment was served upon the city of Dallas. The garnishee answered that it had the money as alleged, but resisted judgment therefor by virtue of this section of its special charter:

"Sec. 169. The property, real and personal, belonging to said city shall not be liable to be sold or appropriated under any writ of execu-

tion or cost bill. Nor shall the funds belonging to said city in the hands of any person be liable to garnishment. Nor shall the city be liable to garnishment on account of any debt it may owe or funds it may have on hand due any person. Nor shall the city or any of its officers or agents be required to answer any writ of garnishment on any account whatsoever."

The plaintiff in the case contended that this section of the city charter was void because in contravention of section 56 of article 3. The Supreme Court, speaking through Justice Henry, overruled this assignment and gave effect to the city charter. But, in doing so, he did not say that his ruling would have been the same had there been a general statute in force to the effect that cities generally were subject to garnishment. On the contrary, as we read his opinion, we think he makes it clear that this charter provision is upheld because it could be applied to any city, not running counter to any general law on the subject to the contrary. As he says, this Dallas garnishment law could have been passed as a general statute affecting all cities. Such a provision could have been made applicable to Dallas by the passage of a general law affecting all cities. But the court said the Legislature did not intend to require any given city to await the enactment of general laws so long as the special charter granted did not run counter to any general statute regulating cities. Of course, the general law authorizes judgment against all garnishees. But there was no provision of the law expressly stating that cities, when under garnishment, should be liable. Consequently, the Legislature not having regulated cities upon this point, we think Judge Henry correctly held the charter provision valid. But that is far from saying that the Legislature could, by special act, repeal, in favor of Dallas, a general act which, by its very terms, was applicable to all other cities of the same class. The inhibition of section 56 of article 3 was not against the passage of local or special laws which might conflict with some general law which the Legislature *could* pass and *could* make applicable; but the prohibition is clearly against an act which the Legislature *does* pass and which *is* applicable. As Judge Henry says, much latitude was intended to be given the Legislature in chartering cities, and as long as cities are not *regulated* by general statute, the Legislature could give to *any* city any right which it could give to *all* cities.

If we had any doubt of our construction of Judge Henry's opinion, it would be entirely removed when we trace the history of the case of Altgelt v. Gutzeit. The opinion of the Court of Civil Appeals in that case is reported in 187 S. W. 220; that of the Supreme Court in 201 S. W. 400, 109 Tex. 123. In that case, the Legislature enacted a special road law for Bexar county. It was passed under

section 9 of article 8 of our Constitution, reading as follows:

"And the Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws."

There was an effort to avoid this local road law because in violation of section 56 of article 3 of the Constitution. The trial court and Court of Civil Appeals held the local law valid. In doing so Judge Moursund said:

"If the authority to legislate by special act upon a certain subject is given by a provision of the Constitution other than section 56, art. 3, such authority carries with it the right to enact all provisions which could legitimately be embraced in the bill if section 56 was not a part of the Constitution."

He cited Judge Henry's opinion, supra, in support of the holding quoted. He construed it just as the Court of Civil Appeals has in the instant case. But Chief Justice Phillips, just about three weeks before Justice Greenwood became a member of the Supreme Court, reversed the lower courts in the Altgelt Case and held the law unconstitutional. His opinion is brief and is in harmony with our views already expressed. Of course, it was not a city case. However, the reasoning is entirely analogous and shows that the lower courts have misunderstood Judge Henry's opinion.

The fact is that it is the very genius of our institutions that laws shall be uniform. Equal rights to all is one of the basic principles of our form of government. Upon it the very structure of our civilization is builded. Our entire history shows this to be true. A law must apply to all individuals alike, or at least to all of a certain class impartially. In the same way, our cities, at least of the same class, must be subject to the same law. We can perceive no reason why Houston should be favored over other cities of her class, nor why people owning property there should not have the same rights in paying taxes as are enjoyed by property owners of other cities of the same class.

In 1912, the Home Rule Amendment was passed, authorizing cities of a certain population to adopt their own charters, with no other limitation than that its provisions should not contravene the Constitution or general laws. In substituting local self-government for legislative rule, it was still provided that no law of any given city should supersede the general law upon the same subject. This has ever been the spirit of our Constitution and law. It should remain so to the end. Article 963 aforesaid rules this case. The charter provision to the contrary is void.

Therefore we recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.