CAMERON et al. v. CITY OF WACO et al.
(No. 661.)

Court of Civil Appeals of Texas. Waco.
April 19, 1928.

Motion for Rehearing Withdrawn   June 21,
1928.

1. Appeal and error ⬅️719(2)—Appellants, after adverse judgment in suit to obtain temporary injunction, need not file assignments of error on appeal (Rev. St. 1925, art. 4662).

In suit for temporary injunction to restrain issuance and sale of city waterworks bonds, appellants after adverse judgment were not required to file assignments of error in appellate court under Rev. St. 1925, art. 4662.

2. Municipal corporations ⬅️1000(1)—Suit to restrain issuance of city waterworks bonds held not premature because validity of bonds had not first been tested by Attorney General (Rev. St. 1925, art. 1175, par. 10; Waco City Charter, § 204).

Suit to restrain issuance and sale of city waterworks bonds held not prematurely brought, though Rev. St. 1925, art. 1175, par. 10, and Waco City Charter, § 204, require that validity of such bonds shall first be tested by Attorney General before court's jurisdiction may be invoked, where plaintiffs alleged that city had authorized the issuance of the bonds,

which had been submitted to Attorney General for his approval, and that unless restrained therefrom he would approve them.

**3. Municipal corporations ⊜⟞53—State Constitution, Enabling Act, and general laws in pari materia constitute fundamental laws of home rule cities.**

The state Constitution, Enabling Act, and the general laws of the state in pari materia constitute the fundamental laws of home rule cities and rank in order given.

**4. Municipal corporations ⊜⟞65—City may not enact any law inconsistent with general laws of the state.**

City may legislate subject only to restriction that it may not enact any law inconsistent with the general laws of the state.

**5. Constitutional law ⊜⟞208(5)—Classification of cities in Enabling Act is not objectionable as class legislation (Enabling Act).**

Enabling Act being a general law, classification of cities made therein is not objectionable as class legislation.

**6. Statutes ⊜⟞93(4)—Legislature may classify municipalities based upon a substantial difference without creating special law.**

Legislature may classify cities and towns based upon a substantial difference, and when not arbitrary or fictitious the mere fact that a law applies only to one class of cities and not to another class does not make such act a special law.

**7. Statutes ⊜⟞51—Laws may be adopted by appropriate reference without necessity of reenacting them in terms (Const. art. 3, § 36).**

Legislature and cities may adopt laws otherwise unobjectionable by appropriate reference, without necessity of re-enacting them in terms, and without violating Const. art. 3, § 36, inhibiting revivals or amendments of laws by reference.

**8. Statutes ⊜⟞184, 224—State of law at time of enactment and mischief to be corrected are to be considered in interpretation.**

To correctly interpret a statute, state of law at time of its enactment and mischief sought to be corrected are to be considered.

**9. Municipal corporations ⊜⟞865(2)—Bonds issued by city of Waco for waterworks construction held to represent "debt" as used in Constitution (Rev. St. 1925, arts. 1165–1182; Const. art. 11, § 5).**

Under Rev. St. 1925, arts. 1165–1182, bonds issued by city of Waco for the construction of waterworks *held* to represent a debt as used in Const. art. 11, § 5.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

**10. Municipal corporations ⊜⟞911—City of Waco held authorized to issue bonds to establish waterworks outside city limits (Rev. St. 1925, arts. 823, 824, and arts. 1165–1182).**

Under Rev. St. 1925, arts. 1165–1182, city of Waco *held* to have authority to issue negotiable bonds for purpose of acquiring property and establishing waterworks outside the city limits;

article 823 not being applicable to home rule cities in view of article 824.

**11. Statutes ⊜⟞255—Statutes adopted by reference are applicable as of date of adoption unless otherwise shown.**

Rule of construction for statutes adopted by reference is that they are applicable as of the date such adoption is made, unless there is some provision in the act of adoption showing that they were adopted mutatis mutandis.

**12. Statutes ⊜⟞225—Where both acts can stand together rule is to let them stand.**

Where both acts on a given subject can stand together, the rule is to let them stand.

**13. Municipal corporations ⊜⟞918(3)—Election notices for issuance of bonds for city waterworks stating bonds should bear interest not more than 5 per cent. per annum held sufficient.**

Election order and notices for issuance and sale of city waterworks bonds *held* to comply with requirements of law that they state the rate of interest the proposed bonds should bear, where the notices stated that the bonds should bear a rate of interest not more than 5 per cent. per annum.

**14. Municipal corporations ⊜⟞918(3)—Election order and notice for issuance of bonds for construction of city waterworks held to sufficiently state object of bond issue.**

Election order and notice for issuance of bonds for purpose of constructing city waterworks *held* to sufficiently state the purpose and object of bond issue.

**15. Municipal corporations ⊜⟞918(3)—Election order and notice for issuance of city bonds to construct waterworks held to comply with statutes providing requirements for issuance of city bonds (Rev. St. 1925, arts. 701–703).**

Election order and notice for issuance of bonds for construction of city waterworks, providing for levy of a tax sufficient to redeem bonds at maturity, the bonds to be payable serially over a period of 40 years from date thereof and bearing interest at not more than 5 per cent. per annum, payable semiannually, *held* to sufficiently comply with Rev. St. 1925, arts. 701–703, relating to requirements for issuance of city bonds.

**16. Evidence ⊜⟞31—Charter provisions of home rule cities not inconsistent with general law are judicially noticed.**

Charter provisions of home rule cities not inconsistent with the general law are taken judicial notice of by the courts.

**17. Municipal corporations ⊜⟞918(3)—Failure to state in election call and notice for issuance of city bonds for construction of waterworks that tax levy would be made to pay annual interest and to pay for bonds held immaterial.**

Failure to state in election call and notice for issuance of bonds for construction of city waterworks that a tax levy would be made annually sufficient to pay annual interest, and to provide a sinking fund to pay the bonds, could

not injure the electors, since they are presumed, where notice of election was given in substantial compliance with the law, to take notice of the law requiring the assessment and levy of taxes to redeem the bonds when due.

Appeal from District Court, McLennan County; Sam R. Scott, Judge.

Action by W. W. Cameron and others against the City of Waco and others for an injunction. Judgment for defendants, and plaintiffs appeal. Affirmed.

Sleeper, Boynton & Kendall, Williams, Williams, McClellan & Lincoln, Miller & Price, and R. H. Kingsbury, all of Waco, for appellants.

John McGlasson, Weatherby & Rogers, and Geo. W. Morrow, all of Waco, for appellees.

BRADLEY, Special Justice. W. W. Cameron and other property tax paying citizens of the city of Waco brought this suit against the city, its mayor, its board of commissioners, and its secretary, and the Attorney General of Texas, in the Nineteenth district court of McLennan county, seeking a temporary writ of injunction to restrain the issuance and sale of certain waterworks bonds by the city, but the writ was refused by Judge Sam R. Scott, judge of said court, and plaintiffs have prosecuted this appeal from that order.

The case of Cameron et al. v. Connally et al. (Tex. Com. App.) 299 S. W. 221, arose from, and was a contest of, the election involved in this suit, but it does not materially affect this case otherwise than as an adjudication of the validity of the election.

Appellants, by their verified petition, alleged that the election involved in the Cameron Case, supra, was ordered by the city commission, by ordinance, to determine whether bonds of the city to the amount of $3,500,000 should be issued for the purpose of impounding water in the Bosque river to furnish a better water service for the city, and for the general enlargement and betterment of such water supply. The ordinance was pleaded and a copy attached, and notice of such election was duly given, the election held, the result canvassed, and declared favorable to the issuance of the bonds. There are no disputed facts; and in addition to the grounds of complaint made in appellants' petition, the substance of which is embraced in the summarization following, other necessary allegations were made sufficient to show that appellants were entitled to maintain this suit if they had a meritorious cause of action as matter of law.

[1] Appellants were not required to file assignments of error (R. S. art. 4662), nor did they do so, but they have summarized the grounds of their complaint in their brief.

[2] At the threshold of this case, we are met by appellees' contention that the suit was prematurely brought and the court a quo had no jurisdiction over same, and hence this court has none, because the statute and the city charter provide that the validity of such bonds shall first be tested by the Attorney General before the court's jurisdiction may be invoked. R. S. art. 1175, par. 10; Waco City Charter, § 204.

The requirement of the law had been substantially complied with before the court's aid was invoked by this suit. Appellants alleged that the city had authorized the issuance of $1,000,000 of said bonds, which had been submitted to the Attorney General for his approval, and that unless restrained therefrom he would approve them. The Attorney General answered that he had examined the record of such bond issue, was of opinion that they were being issued in accordance with law, and that he deemed it his duty to approve them, which he would do unless restrained therefrom. If appellants had a meritorious cause, as alleged, it was obviously necessary and proper for them to invoke the aid of a court of equity at the time they did, in order to maintain the subject-matter of the suit in statu quo, else the bonds probably would have been quickly and speedily sold and passed into innocent hands, when approved by the Attorney General, and thus placed beyond the power of the court to aid appellants. Fry v. Jackson (Tex. Civ. App.) 264 S. W. 612, 615. If appellants should be required to await the entire completion of the approval and registration of the bonds by the intervening functionaries before resorting to the court to stay the impending injury to them, their remedy would be slain by the meat upon which it fed.

Before approaching the consideration of appellants' contentions, some general observations may not be inappropriate.

[3-6] The state Constitution, the Enabling Act, and the general laws of the state in pari materia constitute the fundamental laws of home rule cities, and they rank in the order above given. Brown v. Fidelity Inv. Co. (Tex. Com. App.) 280 S. W. 567; City of Beaumont v. Fall, 116 Tex. 314, 291 S. W. 202. In addition, the city itself may legislate, subject only to the restriction that it may not enact any law inconsistent with the general laws of the state. The Enabling Act, of course, is a general law, and the classification of cities made therein is not objectionable as class legislation. The Legislature may classify cities and towns based upon a substantial difference and when not arbitrary or fictitious, and the mere fact that a law applies only to one class of cities and not to another class does not make such act a special law. Pierce v. Watkins, 114 Tex. 153, 263 S. W. 905.

[7] The Legislature and the cities may adopt laws, otherwise unobjectionable, by appropriate reference, without the necessity of re-enacting them in terms, and such procedure is not offensive to the provisions of the

Constitution inhibiting revivals or amendments of laws by reference. Constitution, art. 3, § 36; Quinlan v. H. & T. C. Ry. Co., 89 Tex. 356, 371, 34 S. W. 738, 741; Trimmier v. Carlton, 116 Tex. 572, 579, 296 S. W. 1070, 1074.

The city of Waco accepted the benefits of the Home Rule Amendment to the Constitution (art. 11, § 5) and the Enabling Act (R. S. arts. 1165 to 1182), and adopted a special charter under them. The amendment authorizes the city, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or ordinance passed under said charter shall contain any provision *inconsistent* with the Constitution of the state or the general laws enacted by the Legislature of this state, to levy and collect taxes authorized by law, not exceeding 2½ per cent. of the value of the taxable property, but no debt shall be incurred unless at the same time provision is made to assess and collect annually sufficient funds to pay interest and create a 2 per cent. sinking fund. The Enabling Act (article 1175) provides that such cities shall have full power of local self-government, and, after enumerating a great many specific powers granted, further provides (article 1176) that such enumeration of powers shall not preclude such cities from exercising the powers incident to local self-government, provided, of course, no such power shall be exercised which is violative of the Constitution. The specific powers enumerated include "the power to issue bonds upon the credit of the city for the purpose of making permanent public improvements or for other public purposes * * * provided, that said bonds shall have first been authorized" by the voters of the city; and after their approval by the Attorney General, may be issued by such cities, either optional or serial or otherwise as may be deemed advisable by the governing authority. R. S. art. 1175, par. 10. And they shall also have the exclusive right to own, erect, maintain, and operate waterworks and waterworks system for the use of any city and its inhabitants, and to acquire suitable grounds within and without the city for that purpose, and to do and perform whatsoever may be necessary to operate and maintain same. The power of eminent domain is also conferred upon such cities, to take property *within or without* the city for such purposes. There are also numerous provisions of the city charter in accord with the foregoing, not necessary to be here set out.

In their brief, appellants have formulated and set out seven grounds of complaint or points which epitomize the substantive part of their petition. We have grouped such points into four paragraphs and dispose of them accordingly.

First. Points 1 and 2 complain that the city of Waco had no authority to create the debt contemplated in this bond issue, because the levy of a sufficient tax to pay the annual interest on such debt and provide the sinking fund required by law would necessitate a rate of taxation in excess of the constitutional limitation; and, conversely, that if a tax should be levied sufficient for such purposes, in that event, sufficient funds for the maintenance of the city government could not be produced from a rate of taxation within such constitutional limitations.

[8] To correctly understand and interpret a statute, the state of the law at the time of its enactment and the mischief sought to be corrected by it are to be taken into consideration. Formerly, the statutes did not inhibit the governing bodies of municipalities issuing bonds (Citizens' Bank v. City of Terrell, 78 Tex. 450, 14 S. W. 1003); and hence such bodies issued their bonds at will and, no doubt, in many instances, contrary to the wishes and desires of the taxpayers of such municipalities; but to correct this evil the Legislature passed restrictions upon the uncontrolled exercise of such authority, requiring the consent of the voters of such municipalities before such authority should be exercised. The statute was passed, not to confer authority, but to restrict power, to issue bonds, and, this being true, it is apparent that the authority to issue an excessive amount of bonds should not affect nor restrict the power of the governing body of municipalities to issue such amount of bonds as their respective property values would authorize and sustain, under the constitutional limitations.

This position is strengthened by the requirement that after such bonds have been first authorized by the voters, and after their approval by the Attorney General, they may be issued by the municipalities. In any event, this contention appears to be settled by the authorities adversely to the contention of appellants. Cohen v. City of Houston (Tex. Civ. App.) 176 S. W. 809, 815, and Powell v. Charco, etc. (Tex. Civ. App.) 203 S. W. 1178, 1179. (Writs of error were refused in each.)

[9] We are satisfied the bonds here under consideration represented a debt, as the term "debt" is used in the Constitution, art. 11, § 5. McNeal v. City of Waco, 89 Tex. 83, 33 S. W. 322.

[10] Second. Point 3 complains that the city of Waco has no legal authority to issue negotiable bonds for the purpose of acquiring property and establishing waterworks outside the city limits. If approached from the standpoint of reason, taking into consideration the fact that the great cities of the state and nation are establishing such plants of such magnitude as to make it impracticable, and, in many instances, impossible, to locate them within the city limits, and especially so in consequence of the topographical requirements of such projects, it is difficult to suggest a valid reason for limiting

the city's powers, in this respect, by its boundaries; but while such considerations may, doubtless, be given weight, the law must control here as elsewhere. Looking to the authorities cited, they do not support this complaint more cogently even than reason supports it.

The case of Claiborne County v. Brooks, 111 U. S. 400, 4 S. Ct. 489, 28 L. Ed. 470, merely holds that a municipality having power to levy and collect taxes for public improvements may not issue negotiable bonds for that purpose in the absence of statutory authority so to do. City of Brenham v. Bank, 144 U. S. 173, 12 S. Ct. 559, 36 L. Ed. 390, says: "It is easy for the Legislature to confer upon a municipality, when it is constitutional to do so, the power to issue negotiable bonds." And City of Sweetwater v. Hamner (Tex. Civ. App.) 259 S. W. 191, holds a city without power to extend its water mains beyond the city limits for the purpose of serving the public without the city; but recognizes its powers to do so, when such is necessary to properly operate its water system and serve the inhabitants of the city; but we look in vain in all of the cases for a distinction, in regard to the power of a city to issue negotiable bonds, based upon whether the location of the enterprise is within or without the city limits.

Again, we do not regard article 823 as applicable to home rule cities and in conflict with article 1175 and other like provisions of the home rule statute, because of conflict between them, as contended by appellants. The whole of the home rule statute (except article 1174a) is taken from the Enabling Act (chapter 147, p. 307, Acts of Reg. Sess. 33 Leg., effective in 1913), and constitutes chapter 13 of Revised Statutes, relating alone to home rule cities, and that chapter embraces substantially the whole of the act without material change. On the contrary, it appears from the act from which article 823 originated that it was enacted for a special purpose. 37 L. Reg. Sess. p. 12, c. 9, § 3, effective 1921. There were but three sections of that act which are material here. Sections 1 and 2 authorized cities and towns of 5,000 inhabitants or less to levy 1½ per cent. taxes, and cities of 5,000 inhabitants or more to levy 2½ per cent. taxes, "to meet the interest and sinking fund on all indebtedness legally incurred prior to the adoption of the Constitutional Amendment of September 25, 1883," and also for current expenses and the construction of buildings, waterworks and so on, within the city; and section 3, inter alia, provided that "the limitations now provided by law upon the amount of bonds that such cities may issue, shall not apply to bonds issued under this Act." Sections 1 and 2 seem to have served their purpose and not to have survived statutory mutations. But section 3 of the act, having lost its original form at the hands of the codi-

fiers, is now articles 823 and 824, and appears, not under the head of home rule cities, but under the head of municipal bonds.

Article 824, immediately following 823 in the revision, embodies the substance of a clause from said section 3 in these words:

"The limitations now provided by law upon the bonds that such cities may issue shall not apply to bonds issued under this law."

The law referred to in article 824 is article 823, which relates alone to indebtedness provided for in sections 1 and 2 of the act; hence the limitations upon the right of cities to issue bonds is in no event affected by article 823.

Again, section 6 of the home rule act (effective June 30, 1913, R. S. art. 1177) reserved to all cities the benefit of all general laws then effective, and, by reference, adopted them into the home rule act, as applicable to cities falling within the home rule class which should exercise the option given them to become home rule cities; and it was by this means that the substance of articles 823 and 824 became applicable to that class of cities. Thereafter the city of Waco adopted its special charter (effective December 29, 1913) and became a home rule city. The statute in effect at that time, from which articles 823 and 824 were constructed, became a part of the home rule act by "reference" adoption.

[11] The rule of construction for statutes thus adopted is that they are applicable as of the date such adoption is made unless there is some provision in the act of adoption showing that they are adopted mutatis mutandis, which was not the case in this instance; hence the act now appearing as articles 823 and 824 was adopted and effective as of one or the other of the foregoing dates (but unnecessary here to determine which date). In the Trimmier Case, supra, at page 579 (296 S. W. 1074), Chief Justice Cureton states the rule thus:

"The general rule is that when a statute is adopted by a specific descriptive reference, the adoption takes the statute as it exists at that time, and the subsequent amendment thereof would not be within the terms of the adopting act."

Again, if the rule that the expression of one thing excludes all others should be applied here, and if article 823 prescribes a rule, which, without qualification, would embrace an entire class of subjects—that is, should confine the right of all cities and towns to the construction of such public improvements within their limits—nevertheless, article 1175 and other acts applying to home rule cities prescribe a different rule; that is, that such improvements may be so constructed within or without the city limits, by home rule cities, which are part of the class covered by the first article; hence the

home rule statute must be construed as an exception to the general rule prescribed by article 823, and be governed by article 1175 and kindred acts, applicable to home rule cities only.

The correct rule of construction of statutes in pari materia is given and illustrated in Lufkin v. City of Galveston, 63 Tex. 437, wherein two articles of the Constitution were under consideration. Article 11, § 5, then provided that cities of 10,000 inhabitants might levy and collect such taxes as might be authorized by law, not exceeding 2½ per cent. on the taxable values, while article 8, § 9, provided that no city or town should levy more than 65 cents on the $100 valuation, except as provided in the Constitution. The charter of the city of Galveston permitted it to levy $1.50 on the $100 valuation, and it had levied $1.06 thereof, whereupon its right to do so was drawn in issue. Chief Justice Wilie said the rule of construction of such instruments, where there is an apparent conflict, is to adopt that construction which gives effect to every part, rather than that which renders a portion of it nugatory, and, at page 439, made the following application of the rule:

"As a natural result of this principle, it follows that where in one section a general rule is prescribed, which without qualification would embrace an entire class of subjects, and in another section a different rule is prescribed for individual subjects of the same class, the latter must be construed as exceptions to the general rule, and be governed by the section which is applicable to them alone."

This rule of construction is approved by Chief Justice Cureton in Walker v. Meyers, 114 Tex. 225, 230, 266 S. W. 499.

[12] Again, the power given ·home rule cities to construct such projects outside their limits is merely negatived by article 823 by force of the implication arising from the application of the maxim, Expressio unius est exclusio alterius; but this principle does not apply in the instant case because the express authority given home rule cities to erect such projects within or without their limits is not inconsistent with, but merely goes beyond, and is more extensive and comprehensive than, the general· provisions contained in article 823, authorizing the same thing done by all cities and towns within their limits. The law which restricts the charter powers of home rule cities merely limits such powers to some *inconsistency* with the general law. There is no inconsistency between these provisions. The home rule act and the charter of Waco authorize it to do those things named within or without the city limits; and article 823 merely authorizes any city or town to do the same things within the city limits, but does not deal with nor negative the power to do them outside the cities. This is not a conflict.

Both acts. can stand together; the rule in such cases is, let them stand. Lufkin Case, supra; Bryan v. Sundberg, 5 Tex. 418, 424.

[13] Third. Point 5 complains that the election order and notices do not comply with the requirements of the law that they state the rate of interest the proposed bonds should bear. The contention is here made that the provision of law which requires the rate of interest that the bonds shall bear to be submitted to and passed upon by the voters is not complied with by stating the bonds shall bear a rate of interest "not more than 5 per cent. per annum." Reliance is placed upon decisions to the effect that the statement of a rate of taxation not exceeding a given rate does not meet the requirement of law that the rate of taxation to be levied shall be stated. See cases cited in Hunter v. Rice (Tex. Civ. App.) 190 S. W. 840. Five per cent. interest is within the rate provided by law, and certainly no one could justly complain if it should develop that the city could dispose of its bonds at par, bearing a lesser rate of interest than that named in the election, for that would inure to the benefit of the city and its taxpayers who granted the permission for their issuance. There is a material difference between the requirement that the rate of taxes to be levied shall be fixed in voting permission to levy and collect them and the requirement that the rate of interest which bonds shall bear shall be fixed and stated in voting permission to issue them.

In the case of the grant of authority to levy and collect a certain rate of taxes on their property, for a given purpose, the voters not only grant authority to levy and collect such taxes, not exceeding the stated rate, but there is also a mandate therein to levy and collect that rate of taxes. The electors are the sole beneficiaries of such levy, and they authorize same because they are of opinion that such action will subserve the best interests of the taxpayers and they so desire, and they are interested alike in fixing both the maximum and the minimum rate, for they decide to issue that rate of taxation and might not consent to a higher rate nor be content with a lower rate; but with regard to fixing the rate of interest which the obligations to be issued shall bear, it is different. The electors are likewise interested in authorizing their agents and servants to incur an obligation for the stated purpose, provided it can be done at a rate of interest not exceeding the specified rate, which necessarily must be sufficient to sell the obligations at par on a fluctuating market; but every interest of every such elector is best subserved by taking advantage of every changing condition in the market by which the obligations so incurred can be sold bearing the lowest possible rate of interest; and this is particularly true where

the bonds "have first been authorized" by the voters and approved by the Attorney General and are "issued by the city *either optional, or serial, or otherwise.*" If obligations are issued with an option, the bond buyers will, of course, base their bids upon the assumption that the option to anticipate payment before their maturity will be exercised, and if the rate of interest is such as to justify the payment of a premium for the obligations, the premium element of their bids will necessarily be circumscribed by the assumption that when such option obtains it will be exercised.

[14] Fourth. Points 4, 6, and 7 complain that the election order and notice do not sufficiently state the purpose and object of the bond issue, that they do not state that a tax levy will be made annually sufficient to pay the annual interest and provide a sinking fund to pay the bonds, and that they declare that the bonds will be paid serially over a period of 40 years, and that they fail to state the date of their maturity. The order states the purpose to determine whether the city would be authorized to issue $3,-500,000.00 bonds of the city "for the purpose of impounding the waters of the Bosque river for a more adequate and better water supply of the city of Waco, and for constructing additions to the filter plant, laying additional water mains and discharge lines, and make such other and further improvements in connection therewith as may be necessary to furnish an adequate supply of water for the city of Waco," and "to levy a tax sufficient to redeem them at maturity," the bonds to be "payable serially over a period of 40 years from the date thereof, and bearing interest at not more than 5 per cent. per annum, payable semiannually."

R. S. art. 701, provides that bonds of a city shall never be issued unless the proposition shall have been first submitted to the voters; article 702 that at the time of ordering a bond election the governing body shall submit the question whether a tax shall be levied for the purpose of paying the interest and creating a sinking fund for their redemption; and article 703 that the proposition submitted shall state the purpose for which the bonds are issued, the amount, the rate of interest, and the levy of taxes sufficient to pay the annual interest and provide a sinking fund to pay the bonds at maturity, and the maturity date, or that the bonds may be issued to mature serially within any given number of years not to exceed 40.

[15-17] The statement of the purpose for which the bonds were to be issued, the amount of them, the rate of interest which they should bear, their maturity date (determinable after their approval (article 1175, par. 10), coupled with the provisions of the law that they could be made "optional or serial or otherwise as may be determined by the governing body,"

or "serially within any given number of years not to exceed 40," were sufficient statements of these requirements; and with respect to the requirement that it be stated that a "levy of taxes sufficient to pay the annual interest and provide a sinking fund to pay the bonds at maturity," it may be said that the charter provisions of home rule cities, not inconsistent with the general law, are taken judicial notice of by the courts, and theoretically are known (if not read) of all men. R. S. art. 1174; Waco Charter, art. 6. Notice of a special election and its purpose being given in substantial compliance with law, the electors take notice of the law requiring the assessment and levy of taxes to redeem the bonds when due; and the failure to so state in the election call and notice could not injure the electors who, knowing the law, know that requirement. Reynolds Co. v. McCabe, 72 Tex. 57, 60, 12 S. W. 165, 166, where Judge Gaines says, "The voters are presumed to know the law"; Austin v. Austin Gas Light & Coal Co., 69 Tex. 180, 190, 7 S. W. 200, 205, where Judge Stayton states the same, in substance, and adverts to the fact that the voters were not misled.

The charter of the city of Waco, of which notice is also taken (article 202), which is referred to in the election call and notice, provides for the issuance of bonds, and, further, that before issuing them, said bonds shall have been first authorized by vote, and at the same time provision shall have been made to assess and collect annually a sufficient sum to pay interest thereon and create a sinking fund of at least 2 per cent. thereon.

Counsel for both contending parties have furnished us learned and able briefs and oral arguments showing much and careful discriminating research and citing many authorities bearing upon the issues involved. This has been of great assistance to us. We have carefully considered these authorities and the arguments of counsel, but this opinion has reached such proportions that it is impractical, and would probably subserve no useful end, to further extend same.

We do not think the progress of one of the important cities of this rapidly developing state should be unduly hampered and delayed in its program of development, while its fellows pass it by, unless, in its eagerness to keep abreast the procession, it has attempted to make its strides out of unison with the law and that its foibles have injured or will injure its citizenry, which is at once the cause of, and reason for, its existence; and, after a careful and painstaking consideration of this record, we do not believe such is the case. Entertaining this view, we are of opinion, and order, that the judgment be in all things affirmed.

Special Chief Justice A. M. FRAZIER and Special Associate Justice R. F. HIGGINS concur in this opinion and in the judgment ordered.