## DRY v. DAVIDSON et al.

### No. 10716.

Court of Civil Appeals of Texas. Galveston.
Feb. 24, 1938.

Rehearing Denied March 24, 1938.

W. Ray Scruggs, of Houston, for appellant.

R. R. Lewis, Geo. D. Neal, W. M. Holland, and Walter E. Boyd, all of Houston, for appellees.

GRAVES, Justice.

This appeal involves alone the constitutionality of subdivision or paragraph 7 of Penal Code, art. 1583, as amended by Senate Bill No. 89, which became effective April 19 of 1937, Vernon's Ann.P.C. art. 1583, subd. 7, applied to cities of Houston's class, and runs as follows: "7. It is further provided that in any city of more than seventy-five thousand (75,000) inhabitants that each member of any such department shall receive a sum of One Hundred Fifty ($150.00) Dollars per month as a minimum wage for said services so rendered."

The suit itself, as brought by appellant —in the form of an application to the Eightieth district court of Harris county for writs of mandamus, effective against the mayor of Houston, members of its city council, and the several heads of its different departments, that is, all the city officials with jurisdiction over the allowance and payment of salaries due its firemen—having been designed as a test of the validity of the quoted statute, was met solely upon that tendered issue by the appellees; and, while the judgment of the learned trial court holding generally in favor of the appellees and against the appellant does not expressly so recite, it otherwise undisputedly appears that it was based solely upon the conclusion that this act was unconstitutional and void.

The act, of which quoted subdivision 7 is the applicable part in this instance, otherwise has to do with the working hours, pay, and vacations of members of the fire and police departments of what are termed our home rule cities, appellant here having been at the time of and for some 15 months prior to the passage of such Senate Bill 89, as well as on the date of the judgment, a member of Houston's

Fire Department; as such he sought by this mandamus suit against its officers to compel the payment to him by the city of $4.40, being what he claimed as the balance of salary, as such fireman, due him for the service he had rendered in that behalf during the last half of the month of April of 1937, represented by the difference in pay between the $138 per month rate for its firemen's salaries under which the city had theretofore been operating, and the $150 per month rate provided for in Senate Bill 89, which had so become effective on the 19th of that month.

So that, this action does not involve the working hours, vacations, or other provisions of this legislation, but specifically and merely the $4.40 wage claim of this city fireman, grounded wholly upon the asserted validity of the raise in pay thus granted him by the Legislature of the state in the copied provision of Senate Bill 89.

As indicated, the parties joined sole issue upon the constitutionality of that act, with the result stated in the court below. They likewise reiterate their controversy here; the appellant, on the one hand, insisting that he had already rendered the service at the date of this trial, that the Legislature had so validly vouchsafed him the increase in pay therefor, and that the city officials—without any other reason or excuse than their claim that the legislative act was unconstitutional—had refused to either issue him the warrant for or pay to him the increased rate so demanded.

The city, on the other hand, while denying none of the factual basis thus laid for the sued-for writs of mandamus, asserted that the act relied upon, relating as it was claimed to do to purely local or municipal affairs, the control of which was vested exclusively in home rule cities by section 5, article 11, of the Constitution of Texas, was wholly void and not binding upon it.

■ It is deemed unnecessary to further detail the nature of and incidents to the two opposing positions thus taken here by the parties; suffice it to say that, under the findings of fact made from undisputed evidence in the record, this court determines not only that the proper factual basis for the coveted writs of mandamus was in all material respects alleged and shown by the appellant, but, further, that

it was also made to conclusively, if not undisputedly, appear that the city at the time of this judgment had on hand amply sufficient funds out of which the $4.40 claimed by appellant was properly payable, provided the act he relied upon was valid, in that there was an excess of $2,000 in the 1937 budget of the fire department, pay-roll account, out of which this small demand could have been paid.

Wherefore, if the challenged section of the law invoked is constitutional, the money being thus available and on hand, the appellant was entitled to the writs sought.

After careful consideration of the matter, aided by able briefs and oral arguments of eminent counsel on both sides, this court finds no fault with the legislative act thus brought under fire, considering it valid and binding upon the city of Houston, under the well-defined holdings of our courts in these, among other, decisions already rendered: Brown v. Galveston, 97 Tex. 1, 75 S.W. 488; Yett v. Cook, 115 Tex. 205, 281 S.W. 837; Hunt v. Atkinson, Tex.Com.App., 18 S.W.2d 594; Hunt v. Atkinson, Tex.Com.App., 12 S.W.2d 142; City of Beaumont v. Fall, 116 Tex. 314, 291 S.W. 202; McCutcheon v. Wozencraft, 116 Tex. 440, 294 S.W. 1105; Dallas Ry. & Terminal Co. v. Price, Tex.Civ.App., 94 S.W.2d 884; Huff v. Wichita Falls, 121 Tex. 281, 48 S.W.2d 580; Brown v. Fidelity Inv. Co., Tex.Com. App., 280 S.W. 567; City of Fort Worth v. Zane-Cetti, Tex.Com.App., 278 S.W. 183; City of Corpus Christi ex rel. Harris v. Flato, Tex.Civ.App., 83 S.W.2d 433.

Indeed, under the extended discussions of counsel before this court, the points of difference between them, in their mutual reliance upon section 5, article 11 (the Home Rule amendment of the State Constitution), apparently get down to the one ultimate question of whether or not the act here under review is "a general law enacted by the Legislature," within the meaning of that amendment; it would, accordingly, appear to be a work of supererogation to range farther out.

■ The language of the material portion of the Home Rule Amendment, the italics being added here, is this: "Cities having more than five thousand (5000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, *subject to such limitations*

*as may be prescribed by the Legislature,* and providing that no charter or any ordinance passed under said charter *shall contain any provision inconsistent with* the Constitution of the State, or of the *general laws enacted by the Legislature of this State."*

Thus upon its face the provision giving such cities the right to adopt or amend their own charters accords that privilege only with these two strings tied to it: (1) They may do so, "subject to such limitations as may be prescribed by the Legislature"; and (2) provided no charter "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature"; this phrase, "as *may be* prescribed," can only mean that future legislation may also limit whatever action a city may take, as well as that existing at the time it first takes out or amends its charter.

■ That this subdivision 7 is such a general law as the amendment thus so meticulously prescribes seems to this court tò be equally plain; it classifies cities according to their population at the preceding census and makes the salary provision here involved applicable to cities of more than 75,000, to which group Houston belongs. This classification constitutes a general law and not a special one relating to purely local or municipal affairs, within the meaning not alone of the quoted restrictions in the Home Rule Amendment, but also within that of section 56, article 3, òf the Constitution, which, by necessary implication, would seem to mean that the Legislature may regulate home rule cities in such way as it sees fit, provided it does not do so by local or special laws. 30 Tex. Jur. § 89; Cameron v. City of Waco, Tex. Civ.App., 8 S.W.2d 249; Trewitt v. City of Dallas, Tex.Civ.App., 242 S.W. 1073; O'Brien v. Amerman, 112 Tex. 254, 247 S.W. 270; Hunt v. Atkinson, Tex.Com. App., 17 S.W.2d 780; Id., Tex.Com.App., 18 S.W.2d 594; Id., Tex.Com.App., 12 S.W.2d 142.

Indeed, not only does the cited text of 30 Texas Jurisprudence, § 89, so state the rule, but the original opinion in Hunt v. Atkinson, likewise cited supra, thus specifically applies it to a situation, which is the legal equivalent of that here obtaining: "Revised Statutes, 1925, art. 1265, providing for method of annexing additional territory by cities having population of 100,000 and under 150,000, is [a] general

law within the Home Rule Amendment," and a charter provision of the city of Houston, conflicting therewith, is void.

Wherefore, the portion of Senate Bill 89, here under review, prescribing minimum salaries for firemen and policemen in cities of over 75,000 population, by a parity of reasoning, is likewise a general law, and, being such, is clearly a valid legislative enactment, pursuant to the Home Rule Amendment, under the unbroken line of authorities herein first cited.

■ In City of Beaumont v. Fall, 116 Tex. 314, 291 S.W. 202, 205, the Supreme Court descends to such particularity in the statement of that doctrine that nothing remains unsettled about it, saying this: "As long as the state does not, in its Constitution or by general statute, cover any field of activity of the cities of this state, any given city is at liberty to act for itself. But, when the state itself steps in and makes a general law and applies such law to all cities of a certain class, then we submit that no city of the same class is authorized, under our Constitution, to enact contrary legislation. If this principle has not already been adopted as the settled law of this state, then it should be so understood from this time forward."

In the McCutcheon v. Wozencraft Case also, 116 Tex. 440, 294 S.W. 1105, this like declaration was made: "City charters and ordinances must conform to Constitution and general laws of state, as provided by enabling act putting Home Rule Amendment (Const. art. 11, § 5), in effect."

In Hunt v. Atkinson, on motion for rehearing 18 S.W.2d 594, the Commission of Appeals finally concluded the matter with this further and fuller pronouncement, the italics being ours: "The point now made is that, since the adoption of the home rule amendment to the Constitution (article 11, § 5), the Legislature is without power to grant a charter to a city such as Houston, and that therefore it has no power to do indirectly that which it cannot do directly, to wit, pass a law validating the boundaries of the city established in a way confessedly bad at the time. * * * Now, article 1165 [the enabling act of the Home Rule Amendment] of the Revised Statutes 1925, declares, with reference to the right of the people of a municipality to select their charter, that the same shall be *'subject to such limitations as may be prescribed*

*by the Legislature,'* and *shall contain nothing 'inconsistent with the Constitution or general laws of this State.'* If the last clause by way of limitation stood alone, it might with great force be argued that home rule cities possess exclusive power superior to that of the Legislature with respect to all municipal matters not inconsistent with the Constitution, since the term 'general laws' might be construed to mean laws of the state other than municipal laws. There is excellent authority elsewhere throughout the country for this contention. But this is not the sole limitation imposed upon the municipality. Their charters must be *'subject to such limitations as may be prescribed by the Legislature.' This clearly shows that the legislative power is in all things supreme; that the power of the municipality is subject in all respects to 'such limitations' as may be prescribed by the Legislature, without distinction 'as to those limitations then existing* or *arising through subsequent legislative enactments.* We take it to be that the power of the municipality of home rule cities is not supreme in matters of legislation, but is at all times subject to any and all limitations that may be prescribed by the Legislature."

Like recognitions of the rule appear in each of the other cases so before cited on this feature; those in Dallas Railway & Terminal Co. v. Price, and Huff v. City of Wichita Falls, being particularly direct and explicit.

These quoted holdings, therefore, authoritatively overrule appellees' contrary contention, which, when reduced to its ultimate purport, simply amounts to an attempt to engraft upon the express limitation in the Home Rule Amendment, "subject to such limitations as may be prescribed by the Legislature," a further one to this effect, "No such act of the Legislature shall deal with purely local or municipal affairs"; whereas, the only limitation placed by the people in ordaining that amendment upon the Legislature in the regulation of cities coming under its protection is that it must be done by general law.

Neither did the pre-existing firemen's minimum-salary ordinances of the city of Houston of 1936 stand in the way of this subsequently enacted general law of the state in the nature of a veto—rather were they just superseded or amended by it in that respect as the in-evitable effect of the visitation of superior authority.

Since these conclusions determine the merits of the appeal, such other questions as are presented in the briefs become immaterial; hence discussion of them will be foreborne.

It follows that the judgment should be reversed, and the writs of mandamus as prayed for should be issued; it will be, so ordered.

Judgment reversed; writs of mandamus ordered.

PLEASANTS, C. J., absent.