

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

March 10, 1961

Honorable George L. Preston, Chairman
Municipal and Private Corporations
House of Representatives
Austin, Texas

Opinion No. WW-1012

Re: Constitutionality of House Bill
14 of the 57th Legislature per-
taining to settlement of griev-
ances and disputes concerning
firemen's salary, hours of
Dear Mr. Preston:          work and other emoluments.

You have requested an opinion on the constitutionality of
House Bill 14 of the 57th Legislature.

Section 1 of House Bill 14 declares a public policy that
firemen are prohibited from striking or engaging in collective
bargaining while claiming the right to strike as against the
public policy of the State of Texas, and that grievances and
disputes shall be submitted to arbitration as provided by the
Bill.

Sections 2, 3, 4, 5, 6, and 7 prescribe the method and
procedure of such arbitration. Section 8 makes it a penal of-
fense for any city official in any city covered by the Bill to will-
fully violate the provisions and terms of any decision made pur-
suant to the Bill. Section 9 is a severability clause, Section 10
is a cumulative clause and Section 11 is the emergency clause.

Briefly, the Bill provides the procedure for submitting
a grievance or dispute to a Commission of Arbitration or to a
Firemen's Hearing Commission and provides for the approval
of the decision or recommendation of such Commission by

adoption of a city ordinance pursuant thereto or rejection of such decision or recommendation by the governing body of the city and an election to be submitted to qualified voters of the city to determine whether to approve or adopt such decision or recommendations and ordinance pursuant thereto.

House Bill 14 contains but one subject, which is expressed in its title and the body of the Bill conforms to the caption and is, therefore, in compliance with the provisions of Section 35 of Article III of the Constitution of Texas.

Article XVI, Section 13 of the Constitution, provides:

> "It shall be the duty of the Legislature
> to pass such laws as may be necessary and
> proper to decide differences by arbitration
> when the parties shall elect the method of
> trial."

Section 3 of House Bill 14 provides that upon receipt of an appropriate request, the governing body of the city "may elect to participate in an arbitration proceeding . . ." The proposed legislation is accordingly authorized by the above quoted provision of our Constitution.

We presume that a constitutional question may also have arisen as to whether this act would take from the governing body of a city one of its governmental functions and in effect transfer the city's duties and responsibilities concerning wages and working conditions to some other agency or group. The authority of the Legislature with reference to municipal matters was well stated in Hunt v. Atkinson, 18 S.W. 2d 594 (Tex. Comm. App. 1929), as follows:

> "Their (city) charters must be 'subject to
> such limitations as may be prescribed by the
> Legislature.' This clearly shows that the legis-
> lative power is in all things supreme; that the
> power of the municipality is subject in all re-
> spects to 'such limitations' as may be prescribed
> by the Legislature, without distinction as to those

limitations then existing or arising through
subsequent legislative enactments. We take
it to be that the power of the municipality of
home rule cities is not supreme in matters
of legislation, but is at all times subject to
any and all limitations that may be pre-
scribed by the Legislature. "

In House Bill 14 if is not mandatory that the city officials
accept the recommendations of either the Arbitration Commission
or the Hearing Commission and such recommendations, not being
binding on the city, cannot, therefore, be considered an invalid
delegation of a governmental function. The authority of the Legis-
lature to provide that issues relating to salaries of firement and
policemen be submitted to the vote of the qualified electors at an
election, as is provided in Article 1583-2, Vernon's Penal Code,
is well established and clearly constitutional. City of Wichita
Falls v. Cox , 300 S. W. 2d 317 (Civ. App. 1957, error ref., n. r. e. )
and cases cited therein. The authority of the Legislature to establish
the Firemen's and Policemen's Civil Service, Article 1269m, Ver-
non's Civil Statutes, dealing with working conditions and related
matters has similarly been held constitutional in numerous cases.
City of Wichita Falls v. Cox, supra, The authority of the Legisla-
ture in this field has in fact been consistently upheld by the Courts.

Article 1583, Vernon's Penal Code, providing a wage and
hour law for members of any fire department or police department
in certain cities and making it a penal offense for the city official
having charge of the fire department or police department to vio-
late any provision of Article 1583, was held to be constitutional in
Dry v. Davidson, 115 S. W. 2d 689 (Civ. App., 1938, error ref. ) and
McGuire v. City of Dallas , 141 Tex. 170, 170 S. W. 2d 722 (1943).
In Dry v. Davidson it was held that under Section 5 of Article XI
of the Constitution of Texas:

"Thus upon its face the provision of giving
such cities the right to adopt or amend their own
charters accords that privilege only with these
two strings tied to it: (1) They may do so 'subject
to such limitations as may be prescribed by the
Legislature;' and (2) provided no charter 'shall

contain any provision inconsistent with the
Constitution of the State, or of the general
laws enacted by the Legislature;' this phrase,
'as may be prescribed' can only mean that
future legislation may also limit whatever
action a city may take, as well as that exist-
ing at the time it first takes out or amends
its charter. "

The Court further pointed out that Article 1583, "classifies
cities according to their population at the preceding census and
makes the salary provision here involved applicable to cities of
more than 75, 000, to which groupHouston belongs" and held that
the classification constitutes a general law and not a special one
within the meaning of Section 56 of Article III of the Constitution
of Texas.

In construing the provisions of Article 1583 of the Penal
Code, the Court in McGuire v. City of Dallas, supra, pointed
out:

"It is clear therefore that the legislature
by the grant of additional compensation to those
who were required or permitted to work over-
time hours did not intend to render the prohi-
bited work void, but rather to prevent it. The
statute does not undertake to penalize the fire-
men but penalizes the municipality by the exac-
tion of time and one-half for overtime for the
overtime hours required or permitted. The
penal offense provided by the statute is applica-
ble to 'the city official having charge of the
fire department * * *' and not to the municipali-
ty or firemen. . . . "

On the constitutional question, the Supreme Court stated:

"The city attacks the quoted statute,
particularly Section 7 thereof, on constitu-
tional grounds. This court settled that ques-
tion by the refusal of the writ of error in

the case of Dry v. Davidson, Tex. Civ. App.,
115 S. W. 2d 689, writ refused."

The Court further pointed out:

". . . There is no relation between the
pension law and Article 1583. They are separ=
ate and independent legislative enactments.
A comprehensive pension system for incorpor-
ated cities and towns has been authorized by
statute. Articles 6229-6243; 6243a as amended,
44th Legislature, Vernon's Ann. Civ. Sts. arts.
6229-6243, 6243a. The constitutionality of
the act was sustained by this court in the case
of Byrd v. City of Dallas, et al., 118 Tex. 28,
6 S. W. 2d 738, upon the theory that contributions
made by the municipality and the employee to
the pension fund were a part of the agreed com-
pensation, hence, not a grant of public funds to
private purposes, etc. as prohibited by our
state constitution."

The case of Congress of Industrial Organizations v. City
of Dallas , 198 S. W. 2d 143 (Civ. App. 1946, error ref., n. r. e. )
involved the validity of a city ordinance prohibiting any city em-
ployee from organizing or becoming a member of a labor union.
In sustaining the validity of such ordinance, the Court pointed out
that the status of government employees is radically different
from that of employees in private business in industry, and quoted
with approval the following from Railway Mail Ass'n. v. Murphy,
180 Misc. 868, 44 N. Y. S. 2d 601:

". . . 'Much as we all recognize the
value and the necessity of collective bargain-
ing in industrial and social life, nonetheless,
such bargaining is impossible between the
Government and its employees, by reason
of the very nature of Government itself. The
formidable and familiar weapon in industrial
strike and warfare -- the strike -- is without
justification when used against the Government.

> When so used, it is rebellion against consti-
> tuted authority. * * *' The Court then con-
> cluded, as follows: 'To hold otherwise would
> be to sanction control of governmental func-
> tions not by laws but by men. Such policy if
> followed to its logical conclusion would
> inevitably lead to chaos, dictators and the
> annihilation of representative government.'"

After a thorough review of the authorities in this State
and numerous authorities in other jurisdictions, the Court con-
cluded:

> "Appellants' main contention seems to be
> that the ordinance in question is unconstitutional
> and void because it would deprive them of cer-
> tain freedoms, rights and privileges granted by
> both the Federal and State Constitutions. We
> do not think so; these rights and privileges are
> purely personal and may be waived. Appel-
> lants overlook the fact that by voluntarily ac-
> cepting employment with the City of Dallas,
> they assumed the obligations incident to such
> employment; impliedly agreed to accept same
> under the conditions as they existed; agreed to
> accept the employment and compensation there-
> for as regulated and controlled by existing laws;
> especially did they obligate themselves not to
> organize a labor union or affiliate with one.
> These employees of the City may assert their
> constitutional rights and privileges if they choose
> to do so, but it is quite clear that to assert them
> under the circumstances would be inconsistent
> with the duty as employees of the City, and sub-
> ject them to discharge from the service. While
> they have the right to these constitutional privi-
> leges and freedoms, they have no constitutional
> right to remain in the service of the City."

Since government employees, such as city firemen, do
not have the authority to strike, the Legislature has the authority

to prescribe the method whereby peaceable settlements of grievances and disputes involving city firemen may be accomplished without the governmental operations of the city being interfered with.

Summarizing the foregoing authorities and the authorities contained in such cases, it is not settled that the Legislature has the authority to prescribe by general law salary, wages, compensation, emoluments, hours of employment and working conditions of city employees and to prescribe penalties for violation of such acts by city officials.

It is our opinion that House Bill 14 as submitted with your request is a general law prescribing the conditions of employment of firemen in cities of 10,000 inhabitants or more and it is, therefore, constitutional. Dry v. Davidson, 115 S. W. 2d 689 (Civ. App. 1938, error ref.); McGuire v. City of Dallas, 141 Tex. 170, 170 S. W. 2d 722 (1943); Congress of Industrial Organizations v. City of Dallas, 198 S. W. 2d 143 (Civ. App. 1946, error ref., n. r. e.).

## SUMMARY

House Bill 14 of the 57th Legislature, as submitted with your request, pertaining to settlement of grievances and disputes concerning firemen's salary, hours of work, conditions of work and other emoluments, is constitutional. Dry v. Davidson, 115 S. W. 2d 689 (Civ. App. 1938, error ref.); McGuire v. City of Dallas, 141 Tex. 170, 170 S. W. 2d 722 (1943); Congress of Industrial Organizations v. City of Dallas, 198 S. W. 2d 143 (Civ. App. 1946, error ref., n. r. e.).

Yours very truly,

WILL WILSON
Attorney General of Texas

By John Reeves
John Reeves
Assistant

JR:mfh

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

W. E. Allen
W. Ray Scruggs
Raymond V. Loftin

REVIEWED FOR THE ATTORNEY GENERAL
BY: MORGAN NESBITT